IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GHASSAN ABDULLAH AL SHARBI, *et al.*, | ) ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | Civil Action No. 05-CV-2348 (EGS) |
| GEORGE WALKER BUSH, President of the United States, *et al.*, | ) ) ) ) | |
| Respondents. | ) ) ) | |

**RESPONDENTS' OPPOSITION TO PETITIONER'S COUNSEL'S MOTION TO
ENJOIN MILITARY COMMISSION PROCEEDINGS**

Respondents hereby oppose the motion filed by petitioner's counsel to enjoin the military

commission proceedings against petitioner. Dkt. No. 7 ("Petr's Mot."). The motion fails to meet

the standards for the extraordinary remedy of a preliminary injunction. See Mazurek v.

Armstrong, 520 U.S. 968, 972 (1997); Mova Pharm. Corp. v. Shalala, 140 F.3d 1060, 1066 (D.C.

Cir. 1998). In particular, the recent enactment of the Detainee Treatment Act of 2005

withdrawing this Court's jurisdiction in this case, combined with the preliminary nature of

petitioner's military commission proceedings and the extraordinary relief sought in the motion,

undermine petitioner's counsel's arguments and demonstrate that an injunction is neither needed

nor appropriate. Accordingly, the Court should deny the request to enjoin the military

commission.

## ARGUMENT

Petitioner's counsel's motion should be denied because it fails to satisfy the standards for a preliminary injunction.  It is well established that courts should grant preliminary injunctions only sparingly because they are extraordinary forms of judicial relief.  See Dorfmann v. Boozer, 414 F.2d 1168, 1173 (D.C. Cir. 1969); Moore v. Summers, 113 F. Supp. 2d 5, 17 (D.D.C. 2000). As the Supreme Court has stated, "It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  Mazurek, 520 U.S. at 972  (emphasis added) (citation and quotation marks omitted).

In assessing whether to grant preliminary injunctive relief a court must consider four factors: (1) whether the movant is substantially likely to succeed on the merits; (2) whether the movant would suffer irreparable injury if the injunction were not granted; (3) whether an injunction would substantially injure other interested parties; and (4) whether the public interest would be furthered by the injunction.  See Mova Pharm., 140 F.3d at 1066 (citation omitted). These factors "interrelate on a sliding scale and must be balanced against each other."  Barton v. Dist. of Columbia, 131 F. Supp. 2d 236, 241 (D.D.C. 2001).  Thus, a weak showing on one or more factors requires an especially strong showing on the remaining factors.  See id. at 241-42; Sociedad Anonima Vina Santa Rita v. U.S. Dep't of Treasury, 193 F. Supp. 2d 6, 13-14 (D.D.C. 2001).  In this case, the preliminary injunction standards have not been met with respect to the extraordinary relief petitioner's counsel seeks.

## I.    PETITIONER WOULD NOT SUFFER IRREPARABLE INJURY IF AN INJUNCTION IS NOT GRANTED.

Petitioner's counsel has not shown that petitioner will suffer irreparable harm if this Court does not enjoin petitioner's military commission proceedings, which are still preliminary in nature. Petitioner's counsel attempts to mislead the Court by suggesting that petitioner's military commission trial will begin next week. See Petr's Mot. at 7, 9. In fact, however, petitioner's military commission proceedings are still preliminary in nature; no trial has been scheduled. A preliminary injunction is neither warranted nor appropriate.

A party seeking preliminary injunctive relief must demonstrate irreparable injury because "[t]he basis of injunctive relief in the federal courts has always been irreparable harm." CityFed Financial Corp. v. Office of Thrift Supervision, 58 F.3d 738, 747 (D.C. Cir. 1995) (quoting Sampson v. Murray, 415 U.S. 61, 88 (1974)). If the movant does not show irreparable injury, "that alone is sufficient" for a district court to deny preliminary injunctive relief. Id. Further, in this Circuit, injury is irreparable only if it is "both certain and great." Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985). This requires that the alleged harm "be actual and not theoretical" and "'of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm.'" Id. at 674 (quoting Ashland Oil, Inc. v. FTC, 409 F. Supp. 297, 307 (D.D.C.), aff'd, 548 F.2d 977 (D.C. Cir. 1976)) (emphasis in original).

Implicit in the principles of Wisconsin Gas is the requirement that the movant substantiate any claim that irreparable injury is "likely" to occur. 758 F.2d at 674. Bare allegations of what is likely to occur are of no value since the Court must decide "whether the

-3-

harm will in fact occur." Id. (emphasis in original).  The movant must provide proof indicating
that the harm is certain to occur in the near future.  Id.

Petitioner's counsel's argument that petitioner faces imminent irreparable harm does not
withstand scrutiny because the preliminary nature of his military commission proceedings makes
an injunction untimely.  Petr. Mot. at 6-7.[1]  On April 27, 2006, petitioner had the first and only
session of his military commission so far, and a trial date is as yet not scheduled.  At the last
session, petitioner admitted fighting against the United States, stated that he wanted to represent
himself, rejected his appointed military defense counsel, and said he did not want either a
military replacement or a civilian defender.[2]  See David Morgan, Saudi Man Admits Enemy
Role at Guantanamo Trial, Wa. Post, April 27, 2006 (available at:
http://www.washingtonpost.com/wp-dyn/content/article/2006/04/27/AR2006042700956.html)
(copy attached as Exhibit 1).  Currently, petitioner is scheduled to attend a second preliminary
session with the military commission during the week of May 15, 2006.  At the session, the
Presiding Officer intends to consider and address the issue raised by petitioner's decision to
reject his appointed military defense counsel.  This would include consideration of what role
counsel may have in future proceedings consistent with commission procedures and any

---

[1] The President determined on July 6, 2004, that petitioner is subject to the President's
Military Order of November 13, 2001.  See Charge Sheet (available at
http://www.defenselink.mil/news/commissions_exhibits_sharbi.html).  The Appointing
Authority approved petitioner's charge of conspiracy on November 4, 2005, and on December
12, 2005, the Appointing Authority both appointed military commission members to hear
petitioner's case and referred the charges to the military commission.  See Approval of Charges;
Charge Sheet; Appointing Order No. 05-0005; Referral  (all available at
http://www.defenselink.mil/news/commissions_exhibits_sharbi.html).

[2] Mr. Al Sharbi's refusal of civilian counsel raises an issue as to whether the motion to
enjoin the military commission proceedings is authorized by Mr. Al Sharbi.

appropriate ethical constraints or obligations on counsel.  If the representation issue is resolved,

voir dire of the Presiding Officer by counsel may also occur.  Further, matters of scheduling,

including for motions and other matters to ensure a full and fair trial, may be discussed.  Beyond

these proceedings, nothing further is currently scheduled.  As noted, no trial date has been

established.  In sum, petitioner's military commission proceedings are at preliminary stages and

the chance of any substantive matters related to the case being litigated and resolved at the

session next week is unlikely at best.  Thus, the preliminary nature of petitioner's military

commission warrants denial of petitioner's counsel's motion for an injunction.[3]

     Although petitioner's counsel seeks to equate petitioner's case to that of David M. Hicks,

the military commission proceedings involving Hicks had advanced much further than

petitioner's nascent proceedings before being enjoined.  Judge Kollar-Kotelly enjoined the Hicks

military commission days before a "scheduled military commission motions hearing" that was to

be closely followed by Hicks's trial.  Hicks v. Bush, 397 F. Supp. 2d 36, 42 (D.D.C. 2005).

Further, when the injunction was entered in Hicks, a substantial amount of prior motions practice

already had occurred, including a number of hearings.  Prior to entry of the injunction on

November 14, 2005, the Hicks commission had convened on August 25, 2004, counsel were

identified, and voir dire of the commission panel, which at the time consisted of a presiding

officer and two other members sitting as both triers of fact and law, had been conducted.  See

Record of Trial Volume 6 and 7 (Transcript Aug. 25 and Nov. 1-3, 2004 Session) at 1-3

(available at http://www.defenselink.mil/news/commissions_exhibits_hicks.html).  Hicks had

---

[3] The preliminary nature of petitioner's military commission proceedings makes petitioner's counsel's arguments regarding the rules of evidence applicable at trial premature since no trial has even been scheduled yet.

also been arraigned before the military commission and had entered a plea. Hicks, 397 F. Supp. 2d at 38. On November 1-3, 2004, the Hicks commission reconvened and approximately twenty defense motions were argued. See Record of Trial Volume 6 (available at http://www.defenselink.mil/news/commissions_exhibits_hicks.html). Moreover, from October 11, 2005 to November 14, 2005, Hicks's counsel filed approximately fifty-six motions which were followed by prosecution responses and Hicks's counsel's replies. Thus, Hicks's military proceedings had advanced much further along than petitioner's proceedings; indeed, a trial was imminent, before Judge Kollar-Kotelly enjoined the proceedings.

Furthermore, the Supreme Court heard oral argument in Hamdan v. Rumsfeld, No. 05-184, on March 28, 2006, and is likely to issue a ruling no later than June, 2006, the end of the current Supreme Court term. Unlike in the Hicks case, a trial for petitioner Al Sharbi is not scheduled to begin prior to the expected Supreme Court decision; indeed, as noted, no trial is scheduled at all at this point. The potentially imminent Supreme Court decision in Hamdan, which will provide guidance on military commission issues, further counsels against enjoining petitioner's military commission proceedings at this time.

Thus, the purported harm that petitioner's counsel alleges is not imminent. The preliminary nature of petitioner's military commission proceedings demonstrate that there will be no irreparable injury if an injunction is not granted at this early stage. Accordingly, petitioner's counsel's motion for a preliminary injunction should be denied.

## II.    PETITIONER CANNOT DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS.

"It is particularly important for the [movant] to demonstrate a substantial likelihood of success on the merits." Id. at 242 (citing Benten v. Kessler, 505 U.S. 1084, 1085 (1992)) (emphasis added).   Here, however, petitioner's counsel has failed to meet this burden because the Detainee Treatment Act of 2005 withdraws jurisdiction from this Court to grant any relief. Furthermore, the controlling opinion of the Court of Appeals in Hamdan v. Rumsfeld, 415 F.3d 33 (D.C. Cir. 2005), upholds the validity of military commissions such as petitioner's. Petitioner's counsel, therefore, cannot demonstrate a likelihood of success on the merits of the claims related to the military commission, and the request for an injunction should be denied.

Petitioner's counsel is not likely to succeed on the merits of this preliminary injunction motion because the Detainee Treatment Act of 2005 withdraws jurisdiction from this Court to grant any relief.  On December 30, 2005, the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2739 ("the Act"), became law.  The Act, among other things, amends the federal habeas corpus statute to remove court jurisdiction to hear or consider applications for writs of habeas corpus and other actions brought in this Court by or on behalf of aliens detained at Guantanamo, such as petitioner.  Section 1005(e)(1) of the Act amends 28 U.S.C. § 2241 to provide that "no court, justice, or judge shall have jurisdiction" to consider either (1) habeas petitions filed by aliens detained by the Department of Defense at Guantanamo, or (2) any other action relating to any aspect of the detention of such aliens.  In addition, the Act creates an exclusive review mechanism in the Court of Appeals to address the validity of the detention of such aliens held as enemy combatants and, pertinent to the pending preliminary injunction

-7-

motion, the validity of final decisions of military commissions.  Section 1005(e)(2) of the Act

states that the Court of Appeals "shall have exclusive jurisdiction to determine the validity of any

final decision of a Combatant Status Review Tribunal that an alien is properly detained as an

enemy combatant," and it further specifies the scope of that review.  Section 1005(e)(3) of the

Act in turn states that the Court of Appeals "shall have exclusive jurisdiction to determine the

validity of any final decision rendered pursuant to Military Commission Order No. 1, dated

August 31, 2005 [which establishes procedures for military commission trials of individuals such

as petitioner, see Petr's Mot. at Ex. F]," and it likewise specifies the scope of that review.

Section 1005(e)(1), which eliminates the jurisdiction of the courts to consider habeas and other

actions brought by Guantanamo detainees, was made immediately effective without reservation

for pending cases, and § 1005(e)(2), which establishes the exclusive review mechanisms in the

Court of Appeals, was made expressly applicable to pending claims.  Id. § 1005(h).

      As more fully explained in the government's motion to dismiss the Hamdan case

currently pending before the Supreme Court, and the reply in support of that motion, which are

attached hereto as Exhibits 2 and 3 and incorporated herein by reference, it is well settled that

statutes such as § 1005(e)(1) that remove or extend jurisdiction apply to pending cases and

ordinarily should be given immediate effect.  The courts have "regularly applied intervening

statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying

conduct occurred or when the suit was filed."  Landgraf v. USI Film Prods., 511 U.S. 244, 274

(1994).  This practice is followed because "jurisdictional statutes 'speak to the power of the court

rather than to the rights or obligations of the parties.'"  Id. (citation omitted); see also Ex parte

McCardle, 74 U.S. (7 Wall.) 506, 514 (1869) ("Jurisdiction is power to declare the law, and

when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

Because statutes removing jurisdiction presumptively apply to pending cases, Congress must expressly reserve pending cases in such statutes to preserve the federal courts' jurisdiction over them. See Bruner v. United States, 343 U.S. 112, 116-17 (1952) ("This rule — that, when a law conferring jurisdiction is repealed without any reservation as to pending cases, all cases fall with the law — has been adhered to consistently by this Court.").[4] Accordingly, because the relevant provision of the Act does not contain any reservation saving pending cases, "all cases fall with the law." Id. That conclusion is underscored by the fact that the Act explicitly provides – without reservation – that the amendment to the habeas statute (28 U.S.C. § 2241) "shall take effect on the date of the enactment." Act § 1005(h)(1). Because subject-matter jurisdiction must subsist throughout the litigation, that language effects an immediate elimination of jurisdiction. Additionally, Congress not only declined to include a reservation saving pending cases, but expressly provided that the exclusive procedures established by the Act for review of challenges to military commission decisions apply to such claims "pending on or after" the Act's enactment. Id. § 1005(h)(2). Thus, Congress made clear that the district courts no longer have jurisdiction over any actions filed on behalf of Guantanamo detainees, and reinforced that result by providing that the exclusive review procedures in § 1005(e)(3) provide the only avenue for judicial relief.

---

[4] See also Santos v. Territory of Guam, 436 F. 3d 1051 (9th Cir. 2006) (holding that, under Bruner and McCardle, court lacked jurisdiction to consider petition from Guam Supreme Court over which it had previously asserted jurisdiction because Congress passed law withdrawing its jurisdiction while case was pending).

Thus, in light of the new, statutory withdrawal of this Court's jurisdiction, and the creation of the exclusive review mechanism for military commission decisions in the Court of Appeals (under which only final military commission decisions are subject to judicial review), petitioner has no likelihood of success on the merits and his counsel's request for a preliminary injunction should be denied. Indeed, because the Act vests "exclusive" jurisdiction in the Court of Appeals "to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant," id. § 1005(e)(1), it would be inappropriate for the Court to order relief in the interim that might infringe upon the Court of Appeals' exclusive jurisdiction. See Telecommunications Research and Action Center v. FCC, 750 F.2d 70, 75, 78-79 (D.C. Cir. 1984) (request for relief in district court that might affect Court of Appeals' future, exclusive jurisdiction is subject to the exclusive review of the Court of Appeals).

The Court cannot and should not proceed to grant petitioner's counsel's request for relief, which seeks to interfere in and restrain the military from going forward with a proceeding meant ultimately to address accused violations of the laws of war by an enemy fighter during a time of ongoing military conflict, see infra at § III, without first determining the issue of the Court's jurisdiction under the Act. See, e.g., Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter "spring[s] from the nature and limits of the judicial power of the United States" and is "inflexible and without exception.") (quoting Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884)). Two other Judges of the Court already recognized that it would be inappropriate to enjoin military commission proceedings still in their preliminary stages without determining the Court's

-10-

jurisdiction under the Detainee Treatment Act.   Petitioners in <u>O.K. v. Bush</u>, No. 04-CV-1136 (JDB) (dkt. no. 147), and <u>Al Jayfi v. Bush</u>, No. 05-2104 (RBW) (dkt. no. 15), filed motions to enjoin initial proceedings in their military commission proceedings.  In response, Judges Walton and Bates issued orders requiring the petitioners to address the issue of whether the Court retained jurisdiction to act in light of the Detainee Treatment Act.  <u>See</u> <u>O.K.</u>, Order (dkt. no. 148) (copy attached as Exhibit 4); <u>Al Jayfi</u>, Order (dkt. no. 17) (copy attached as Exhibit 5). Petitioners subsequently withdrew their preliminary injunction motions.  <u>See</u> <u>O.K.</u> (dkt. no. 151); <u>Al Jayfi</u> (dkt. no. 19).

Aside from the lack of jurisdiction under the Detainee Treatment Act, petitioner's counsel also cannot demonstrate a likelihood of success because the Court of Appeals in <u>Hamdan v. Rumsfeld</u>, 415 F.3d 33 (D.C. Cir. 2005), confirmed the Executive's power to establish and utilize military commissions, such as the one petitioner challenges and seeks to enjoin, in the current ongoing war against al Qaeda and the Taliban.  Indeed, an injunction against the military commission proceeding here, in effect, would inappropriately fail to pay heed to the decision of this Circuit as established in <u>Hamdan</u>.  <u>Hamdan</u> represents the applicable pronouncement of the Court of Appeals that should be implemented with respect to the question of whether an affirmative injunction against respondents should issue.

Finally, petitioner's counsel's argument that the Supreme Court's grant of <u>certiorari</u> in <u>Hamdan</u> nonetheless automatically demonstrates that petitioner enjoys a substantial likelihood of success on the merits, Petr's Mot. at 3, 5, fails to take into account that the Supreme Court's granting of <u>certiorari</u> "is discretionary and depends on numerous factors other than the perceived correctness of the judgment . . . [under] review."  <u>Ross v. Moffitt</u>, 417 U.S. 600, 616-17 (1974);

-11-

see also Robert L. Stern, et al., SUPREME COURT PRACTICE 243-255 (8th ed. 2002) (certiorari

may be granted because of, inter alia, the importance or uniqueness of the constitutional, factual,

federal jurisdictional, or procedural issues in a case or other factors).  Moreover, it also fails to

take into account that the Detainee Treatment Act of 2005 became law well after the grant of

certiorari in Hamdan.

For these reasons, petitioner's counsel has failed to demonstrate a substantial likelihood

of success on the merits that would support an injunction against petitioner's military

commission proceedings.

### III.    AN INJUNCTION WOULD SUBSTANTIALLY INJURE RESPONDENTS AND BE CONTRARY TO THE PUBLIC INTEREST.

Of primary concern in considering the request for injunctive relief in the unique context

of this case is the inescapable fact that the requested injunction would result in substantial injury

to respondents and be contrary to the public interest.  See Mova Pharm., 140 F.3d at 1066.

Despite petitioner's counsel's dismissive treatment of an injunction halting petitioner's military

commission proceedings, such an injunction would result in substantial harms to the public

interest.  The requested relief is especially extraordinary and drastic because it seeks to restrain

the military from going forward with proceedings meant to address accused violations of the laws

of war by an enemy fighter during a time of ongoing military conflict.  The requested injunction,

therefore, would force upon the Executive further delays in carrying out an important aspect of

the war effort, one grounded and confirmed in historical and judicial precedent, including the

Court of Appeals's decision in Hamdan v. Rumsfeld, 415 F.3d 33 (D.C. Cir. 2005) (holding that

military commission could go forward).

An injunction would also undermine the separation of powers of the three branches of the United States government.  As explained in Hamdan, the President's power to establish and utilize military commissions is long-standing, and both Congress and the Judiciary historically have approved the Executive's use of military commissions during wartime.  A decision by the Court to enjoin the military commission from proceeding with petitioner's case would be an intrusion by the Judiciary into the realm of the Executive, it would further delay and constrain the Executive's ability to carry out a significant aspect of the war against al Qaeda and its supporters, and, thus, it would hurt the public interest in the separation of powers.  This is especially so where Congress has expressed by statute, the Detainee Treatment Act, that district court jurisdiction to take such action should be withdrawn.

In these ways, an injunction would be contrary to the strong public interest in petitioner's military commission proceedings going forward and would substantially injure respondents.

*   *   *

In sum, petitioner's counsel's motion has failed to demonstrate that petitioner is likely to suffer imminent, irreparable harm if an injunction is not issued at this preliminary stage of petitioner's military commission proceeding.  Further, petitioner's counsel cannot demonstrate a substantial likelihood of success on the merits due to the withdrawal of this Court's jurisdiction under the Detainee Treatment Act of 2005 and due to the decision of the Court of Appeals in Hamdan.  In addition, an injunction would be contrary to the strong public interest in carrying out a significant aspect of the war against al Qaeda and its supporters.

## CONCLUSION

For the foregoing reasons, as explained above, the motion for a preliminary injunction should be denied.

Dated: May 9, 2006                     Respectfully submitted,

                                       PETER D. KEISLER
                                       Assistant Attorney General

                                       KENNETH L. WAINSTEIN
                                       United States Attorney

                                       DOUGLAS N. LETTER
                                       Terrorism Litigation Counsel


                                          /s/ Terry M. Henry /  Nicholas J. Patterson
                                       JOSEPH H. HUNT (D.C. Bar No. 431134)
                                       VINCENT M. GARVEY (D.C. Bar No. 127191)
                                       TERRY M. HENRY
                                       ANDREW I. WARDEN
                                       NICHOLAS J. PATTERSON
                                       Attorneys
                                       United States Department of Justice
                                       Civil Division, Federal Programs Branch
                                       20 Massachusetts Ave., N.W.   Room 7212
                                       Washington, DC  20530
                                       Tel:  (202) 514-4107
                                       Fax:  (202) 616-8470

                                       Attorneys for Respondents