**EXHIBIT 2**

No. 05-184

# In the Supreme Court of the United States

SALIM AHMED HAMDAN, PETITIONER

*v.*

DONALD H. RUMSFELD, SECRETARY OF DEFENSE,
ET AL.

*ON WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT*

**RESPONDENTS' MOTION TO DISMISS
FOR LACK OF JURISDICTION**

PAUL D. CLEMENT
  *Solicitor General*
    *Counsel of Record*

PETER D. KEISLER
  *Assistant Attorney General*

GREGORY G. GARRE
  *Deputy Solicitor General*

GREGORY G. KATSAS
  *Deputy Assistant Attorney
  General*

JONATHAN L. MARCUS
  *Assistant to the Solicitor
  General*

DOUGLAS N. LETTER
ROBERT M. LOEB
ERIC D. MILLER
  *Attorneys*

  *Department of Justice
  Washington, D.C. 20530-0001
  (202) 514-2217*

## TABLE OF CONTENTS

Page

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
Statement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Argument:
    Under well-settled principles, Congress's decision to
    remove jurisdiction over this action and others must be
    given immediate effect . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
Appendix . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1a

## TABLE OF AUTHORITIES

Cases:

    *American Steel Foundries* v. *Tri-City Cent.*
        *Trades Council*, 257 U.S. 184 (1921) . . . . . . . . . . . . . . . 15
    *Assessors* v. *Osbornes*, 76 U.S. (9 Wall.) 567 (1870) . . . . . . 12
    *Bradley* v. *School Bd.*, 416 U.S. 696 (1974) . . . . . . . . . . . . 18
    *Bruner* v. *United States*, 343 U.S. 112
        (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11, 12, 13
    *Cheney* v. *United States Dist. Ct.*, 542 U.S.
        367 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    *Duplex Printing Press Co.* v. *Deering*,
        254 U.S. 443 (1921) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    *FCC* v. *ITT World Communications, Inc.*,
        466 U.S. 463 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    *Felker* v. *Turpin*, 518 U.S. 651 (1996) . . . . . . . . . . . . . . . . 21
    *Gallardo* v. *Santini Fertilizer Co.*, 275 U.S.
        62 (1927) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13
    *Hallowell* v. *Commons*, 239 U.S. 506 (1916) . . . . . . 11, 12, 15
    *Hughes Aircraft Co.* v. *United States*
        *ex rel. Schumer*, 520 U.S. 939 (1997) . . . . . . . . . . . . . . . 11

(I)

II

Cases—Continued:                                                    Page

*Insurance Co.* v. *Ritchie*, 72 U.S. (5 Wall.) 541
    (1867)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12

*Lamie* v. *United States Trustee*, 540 U.S. 526
    (2004)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Landgraf* v. *USI Film Prods.*, 511 U.S. 244
    (1994)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10, 11, 14, 15, 18

*Lindh* v. *Murphy*, 521 U.S. 320 (1997)  . . . . . . . . . . . . . 18, 19

*McCardle, Ex parte*, 74 U.S. (7 Wall.) 506
    (1869)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 9

*North Star Steel Co.* v. *Thomas*, 515 U.S. 29
    (1995)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Pennsylvania Bureau of Corr.* v. *United States
    Marshals Serv.*, 474 U.S. 34 (1985)  . . . . . . . . . . . . . . . . 22

*Rasul* v. *Bush*, 542 U.S. 466 (2004)  . . . . . . . . . . . . . . . . . . . 20

*Republic Nat'l Bank* v. *United States*,
    506 U.S. 80 (1992)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Republic of Austria* v. *Altmann*, 541 U.S. 677
    (2004)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 19

*Santos* v. *Territory of Guam*, No. 03-70472, 2005
    WL 3579022 (9th Cir. Jan. 3, 2006)  . . . . . . . . . . . . . . . . . 2

*Schlesinger* v. *Councilman*, 420 U.S. 738 (1975) . . . . . . . . 16

*Sherman* v. *Grinnell*, 123 U.S. 679 (1887)  . . . . . . . . . . . . . 12

*Syngenta Crop Prot., Inc.* v. *Henson*,
    537 U.S. 28 (2002)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Thunder Basin Coal Co.* v. *Reich*, 510 U.S. 200
    (1994)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States* v. *Wells*, 519 U.S. 482 (1997)  . . . . . . . . . . 3, 12

III

Constitution, treaty, statutes, regulation and rules:      Page

U.S. Const. Art. III  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Geneva Convention Relative to Treatment of
    Prisoners of War, Aug. 12, 1949, 6 U.S.T. 3316 . . . . . . 5, 6

Act of Mar. 27, 1868, ch. 34, § 2, 15 Stat. 44 . . . . . . . . . . . . 10

All Writs Act, 28 U.S.C. 1651  . . . . . . . . . . . . . . . . . . . . . . . 21

Authorization for Use of Military Force,
    Pub. L. No. 107-40, § 2(a), 115 Stat. 224 . . . . . . . . . . . . . 6

Detainee Treatment Act of 2005, Pub. L.
    No. 109-148, Div. A, Tit. X, 119 Stat. 2739 . . . . . . . . *passim*

        § 1005, 119 Stat. 2740  . . . . . . . . . . . . . . . . . . . . . 7, 18, 4a

        § 1005(e)(1), 119 Stat. 2742 . . . . . . . . . . . . . . . . . *passim*

        § 1005(e)(2), 119 Stat. 2742  . . . . . . . . . . . . 13, 18, 19, 8a

        § 1005(e)(2)(A), 119 Stat. 2742  . . . . . . . . . . . . . . . 7, 8a

        § 1005(e)(2)(C), 119 Stat. 2742  . . . . . . . . . . . . . . . 18, 8a

        § 1005(e)(3), 119 Stat.
            2743 . . . . . . . . . . . . . . . . . 3, 8, 13, 16, 17, 18, 19, 22, 9a

        § 1005(e)(3)(A), 119 Stat. 2743  . . . . . . . . . . . 15, 17, 9a

        § 1005(e)(3)(B), 119 Stat. 2743  . . . . . . . . . . . . . . . 8, 9a

        § 1005(e)(3)(C), 119 Stat. 2743  . . . . . . . . . . . . . . 8, 10a

        § 1005(e)(3)(C)(ii), 119 Stat. 2743  . . . . . . . . . . . 17, 10a

        § 1005(e)(3)(D), 119 Stat. 2743  . . . . . . . . . . . 8, 18, 10a

        § 1005(h)(1), 119 Stat. 2743  . . . . . . . . . . . 2, 8, 13, 11a

        § 1005(h)(2), 119 Stat. 2743 . . . . . . . . . . . . . 8, 13, 18, 11a

Federal Mine Safety and Health Amendments
    Act of 1977, 30 U.S.C. 801 *et seq.*  . . . . . . . . . . . . . . . . . . . 16

Tucker Act, ch. 359, 24 Stat. 505 . . . . . . . . . . . . . . . . . . . . . 11

Uniform Code of Military Justice,
    10 U.S.C. 801 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

IV

Statutes, regulation and rules—Continued:                    Page

        10 U.S.C. 821 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

        10 U.S.C. 836 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

5 U.S.C. 703 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

28 U.S.C. 1254(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

28 U.S.C. 2241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

28 U.S.C. 2241(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Military Order of Nov. 13, 2001:  Detention,*
   *Treatment, and Trial of Certain Non-*
   *Citizens in the War Against Terrorism,*
   3 C.F.R. 918 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Sup. Ct. R.:

Rule 20.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Rule 21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Rule 20.4(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Miscellaneous:

151 Cong. Rec. (daily ed. Dec. 21, 2005):

   p. S14,263 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

   p. S14,264 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Robert L. Stern et al., *Supreme Court Practice*
   (8th ed. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

# In the Supreme Court of the United States

No. 05-184

SALIM AHMED HAMDAN, PETITIONER

*v.*

DONALD H. RUMSFELD, SECRETARY OF DEFENSE,
ET AL.

*ON WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT*

**RESPONDENTS' MOTION TO DISMISS
FOR LACK OF JURISDICTION**

### INTRODUCTION

This case involves an action brought by an alien who is held at the U.S. Naval Base at Guantanamo Bay, Cuba, and has been charged with an offense against the law of war and designated by the President for trial before a military commission. The Court granted certiorari in this case on November 7, 2005. 126 S. Ct. 622. Congress then enacted the Detainee Treatment Act of 2005 (the DTA or Act), Pub. L. No. 109-148, Div. A, Tit. X, 119 Stat. 2739, which was signed into law on December 30, 2005. See Appendix. Section 1005(e)(1) of that Act amends the habeas statute to provide that "no court, justice, or judge shall have jurisdiction to hear or consider" any action filed by or on behalf of an alien held in military custody at Guantanamo Bay for a writ of habeas

(1)

2

corpus or any other form of relief, except pursuant to exclusive statutory review procedures established by the Act. The Act further states that this provision "shall take effect on the date of the enactment of this Act." *Id.* § 1005(h)(1), 119 Stat. 2743.[1]

For more than a century, this Court has consistently recognized that statutes removing jurisdiction must be given immediate effect, including by this Court. See, *e.g.*, *Insurance Co.* v. *Ritchie*, 72 U.S. (5 Wall.) 541, 544-545 (1867); *Ex parte McCardle*, 74 U.S. (7 Wall.) 506 (1869); *Bruner* v. *United States*, 343 U.S. 112 (1952); *Landgraf* v. *USI Film Prods.*, 511 U.S. 244 (1994). Because the courts must have jurisdiction over a case or controversy throughout the litigation, the removal of jurisdiction results in immediate dismissal no matter what stage the litigation has reached. As the Court explained in *McCardle:* "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." 74 U.S. (7 Wall.) at 514. And, as the Court continued, "judicial duty is not less fitly performed by declining ungranted jurisdiction than in exercising firmly that which the Constitution and the laws confer." *Id.* at 515. Congress is presumed to be aware of that settled practice, and "expects its statutes to be

---

[1] The Detainee Treatment Act was enacted after the Court granted certiorari in this case. Because (for the reasons explained below) the Act immediately removes the jurisdiction of the district court and ultimately the jurisdiction of this Court over this action, and because respondents' brief on the merits is not due until February, this motion is filed pursuant to this Court's Rule 21. See Robert L. Stern, et al. *Supreme Court Practice* § 16.8(b), at 750-751 (8th ed. 2002) ("[A]fter the petition for certiorari has been granted * * *, a motion to dismiss may be received if not based upon grounds already advanced.").

3

read in conformity with th[e] Court's precedents." *United States* v. *Wells*, 519 U.S. 482, 495 (1997).

Because the Detainee Treatment Act in plain terms removes the Court's jurisdiction to hear this action, the Court should dismiss this case for want of jurisdiction or vacate with instructions for the lower courts to dismiss, or, at a minimum, dismiss the writ as improvidently granted. That does not leave petitioner without any avenue of judicial review. Petitioner may seek review in the U.S. Court of Appeals for the District of Columbia Circuit of any final decision rendered against him by a military commission pursuant to the special review procedures established by Congress. DTA § 1005(e)(3), 119 Stat. 2743. And he may seek review in this Court of any adverse decision rendered by the District of Columbia Circuit pursuant to those procedures. But the Act (§ 1005(e)(1), 119 Stat. 2743)) plainly divests the courts of jurisdiction to "hear or consider" the instant pre-trial challenge brought by petitioner to the military commission. Accordingly, "the only function remaining to the court is that of announcing that fact and dismissing the cause." *McCardle*, 74 U.S. (7 Wall.) at 514.

## STATEMENT

1.  In the wake of the September 11 attacks, the President ordered the establishment of military commissions to try members of al Qaeda and others involved in international terrorism against the United States. In doing so, the President expressly relied on "the authority vested in me * * * as Commander in Chief of the Armed Forces of the United States by the Constitution and the laws of the United States of America, including the Authorization for Use of Force Joint Resolution (Public Law 107-40, 115 Stat. 224) and sections 821 and

4

836 of title 10, United States Code." *Military Order of Nov. 13, 2001: Detention, Treatment, and Trial of Certain Non-Citizens in the War Against Terrorism*, 3 C.F.R. 918 (2002) (Military Order).[2]  In the Military Order, the President expressly found that

> To protect the United States and its citizens, and for the effective conduct of military operations and prevention of terrorist attacks, it is necessary for individuals subject to this order  *  *  *  to be detained, and when tried, to be tried for violations of the laws of war and other applicable laws by military tribunals.

Military Order § 1(e), 3 C.F.R. 918.

In July 2003, the President, acting pursuant to the Military Order, designated petitioner, who is detained at Guantanamo Bay, as an individual subject to his order

---

[2]   Section 821 of Title 10, United States Code, provides in relevant part:

**Art. 21.  Jurisdiction of courts-martial not exclusive**

The provisions of this chapter conferring jurisdiction upon courts-martial do not deprive military commissions * * * of concurrent jurisdiction with respect to offenders or offenses that by statute or by the law of war may be tried by military commissions.

Section 836 of Title 10, United States Code, provides in relevant part:

**Art. 36.  President may prescribe rules**

(a) Pretrial, trial, and post-trial procedures, including modes of proof, for cases arising under this chapter triable in courts-martial, military commissions and other military tribunals, * * * may be prescribed by the President by regulations which shall, so far as he considers practicable, apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts, but which may not be contrary to or inconsistent with this chapter.

5

and eligible for trial before a military commission, finding "that there is reason to believe that [Hamdan] was a member of al Qaeda or was otherwise involved in terrorism directed against the United States." Pet. App. 1a-2a. On July 13, 2004, the Appointing Authority for Military Commissions approved and referred to a military commission a Charge alleging that petitioner conspired with Osama bin Laden, Dr. Ayman al Zawahiri, and other members and associates of al Qaeda to commit attacks on civilians and civilian objects, murder and destruction of property by an unprivileged belligerent, and terrorism. *Id.* at 62a-67a. While at Guantanamo, petitioner received a hearing before a Combatant Status Review Tribunal, which confirmed that he is subject to continued detention as an enemy combatant. *Id.* at 2a.

2. Petitioner's counsel instituted these proceedings by filing a petition for habeas corpus and/or mandamus in the United States District Court for the Western District of Washington, seeking to enjoin enforcement of the President's Military Order on the ground that trial before a military commission rather than a court-martial convened under the Uniform Code of Military Justice (UCMJ), 10 U.S.C. 801 *et seq.*, would be unconstitutional and violate the Geneva Convention Relative to the Treatment of Prisoners of War, Aug. 12, 1949, 6 U.S.T. 3316 (the Geneva Convention). See C.A. App. 38-68. While petitioner acknowledged that he worked for bin Laden for many years before his capture, see *id.* at 50-51 (paras. 15-16)—during which bin Laden planned and executed major terrorist attacks against the United States and its allies—petitioner asserted that he had not knowingly participated in terrorist attacks against the United States, *id.* at 52 (para. 19). The District Court in

6

Washington transferred the case to the District of Columbia. *Id.* at 195.

3. On November 8, 2004, one month before petitioner's scheduled trial date and in the face of the government's request that the district court abstain pending the completion of military commission proceedings, the district court took the historically unprecedented step of enjoining the ongoing military commission proceedings on the ground that the scheduled trial would not comply with the Geneva Convention or the UCMJ. Pet. App. 49a.

The court of appeals reversed. Pet. App. 1a-18a. That court also declined to abstain with respect to claims that it viewed as going to the jurisdiction of the military commission, but on the merits it rejected all of petitioner's claims. *Ibid.* Specifically, the court held that Congress had authorized the President to establish military commissions pursuant to the UCMJ, 10 U.S.C. 821, 836, and the Authorization for Use of Military Force, Pub. L. No. 107-40, § 2(a), 115 Stat. 224. In addition, the court rejected petitioner's reliance on the Geneva Convention on the ground that it does not create judicially enforceable rights and, in any event, did not extend any protections to petitioner. Pet. App. 3a-15a.

4. Petitioner filed a petition for a writ of certiorari, which this Court granted on November 7, 2005. 126 S. Ct. 622. On December 19, 2005, petitioner filed a petition for an extraordinary writ, or, in the alternative, for an original writ of habeas corpus (No. 05-790).

5. Congress enacted the Detainee Treatment Act of 2005, Pub. L. No. 109-148, Div. A, Tit. X, 119 Stat. 2739, which was signed into law on December 30, 2005. Section 1005(e)(1) of the Act amends the habeas corpus stat-

7

ute, 28 U.S.C. 2241, by adding the following new subsection:

> (e) Except as provided in section 1005 of the Detainee Treatment Act of 2005, no court, justice, or judge shall have jurisdiction to hear or consider—

>> (1) an application for a writ of habeas corpus filed by or on behalf of an alien detained by the Department of Defense at Guantanamo Bay, Cuba; or

>> (2) any other action against the United States or its agents relating to any aspect of the detention by the Department of Defense of an alien at Guantanamo Bay, Cuba, who—

>>> (A) is currently in military custody; or

>>> (B) has been determined by the United States Court of Appeals for the District of Columbia Circuit in accordance with the procedures set forth in section 1005(e) of the Detainee Treatment Act of 2005 to have been properly detained as an enemy combatant.

Section 1005 further provides that the District of Columbia Circuit has "exclusive jurisdiction" to review the final decisions of Combatant Status Review Tribunals (CSRTs) (DTA § 1005(e)(2)(A), 119 Stat. 2742) and military commissions (§ 1005(e)(3)(A), 119 Stat. 2743). The review procedure that the Act establishes for military commission decisions "shall be as of right" for those aliens sentenced in "a capital case" or "to a term of imprisonment of 10 years or more" and "shall be at the discretion of the [District of Columbia Circuit]" in "any

8

other case." § 1005(e)(3)(B), 119 Stat. 2743.  The Act limits the jurisdiction that Section 1005(e)(3) vests in the District of Columbia Circuit to appeals "brought by or on behalf of an alien" who was detained at Guantanamo Bay "at the time of the [military commission] proceedings" and "for whom a final decision has been rendered." § 1005(e)(3)(C), 119 Stat. 2743.  The Act further confines the District of Columbia Circuit's jurisdiction to consideration of "whether the final decision was consistent with the standards and procedures specified in [Military Commission Order No. 1, dated August 31, 2005 (or any successor military order)]," and "to the extent the Constitution and laws of the United States are applicable, whether the use of such standards and procedures to reach the final decision is consistent with the Constitution and laws of the United States." § 1005(e)(3)(D), 119 Stat. 2743.

The Act provides that Section 1005 "shall take effect on the date of the enactment of this Act."  DTA § 1005(h)(1), 119 Stat. 2743.  It further specifies that the exclusive statutory procedures that the Act establishes for review of CSRT and military commission decisions "shall apply with respect to any claim whose review is governed by" those procedures and "that is pending on or after the date of the enactment of this Act." § 1005(h)(2), 119 Stat. 2743.

## ARGUMENT

### UNDER WELL-SETTLED PRINCIPLES, CONGRESS'S DECISION TO REMOVE JURISDICTION OVER THIS ACTION AND OTHERS LIKE IT MUST BE GIVEN IMMEDIATE EFFECT

Section 1005(e)(1) of the Act—which Congress explicitly made effective on the date of its enactment —amends the habeas corpus statute to provide that "no

9

court, justice, or judge shall have jurisdiction to hear or consider" a habeas corpus petition or "any other action against the United States or its agents relating to any aspect of the detention by the Department of Defense" filed by an alien in military custody at Guantanamo Bay. DTA § 1005(e)(1), 119 Stat. 2742. This action plainly falls within that provision because it was filed against executive officers on behalf of an alien held at Guantanamo Bay and relates to the alien's detention.[3] As such, the courts—including this Court—lack jurisdiction to "hear or consider" this action.

1. Petitioner suggests that Congress did not intend the Act to remove this Court's jurisdiction to hear this action. See 05-790 Pet. for an Extraordinary Writ at 6-7. That contention is contradicted not only by the plain terms of the Act, but also by this Court's precedents.

It is well settled that statutes that remove jurisdiction apply to pending cases and ordinarily should be given immediate effect. More than a century ago, this Court held that an Act of Congress repealed its jurisdiction to review a circuit court decision denying a habeas corpus petition filed by a Mississippi resident, McCardle, who sought release from "custody by military authority for trial before a military commission." *Ex*

---

[3] Petitioner labeled his petition as one for mandamus or for habeas corpus. As respondents have explained before, petitioner's challenge to the President's authority to hold him in custody for trial by military commission (and ultimately to confine him pursuant to a military commission judgment) is a paradigmatic habeas action. See Gov't Dist. Ct. Reply Mem. of P. & A. in Supp. of Mot. to Dismiss or Transfer 9-11. In any event, even if petitioner could properly characterize his suit as something other than a habeas action, the catch-all provision eliminating jurisdiction over "any other action * * * relating to any aspect of the detention" (DTA § 1005(e)(1), 119 Stat. 2742) would bar review of his claim.

10

*parte McCardle*, 74 U.S. (7 Wall.) 506, 508 (1868).[4]  Although the Court had asserted jurisdiction over the matter and heard oral argument before the law was passed, the Court nonetheless concluded that, after the law was enacted, it could not "proceed at all" with the case and dismissed the appeal for "want of jurisdiction."  *Id.* at 515.  As the Court explained, "[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  *Id.* at 514.  Moreover, the Court continued, application of the new law to a pending matter flowed from "the general rule" that "when an act of the legislature is repealed, it must be considered, except as to transactions past and closed, as if it never existed."  *Ibid.* (citation omitted).

This Court has "regularly" applied that rule to "intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed."  *Landgraf* v. *USI Film Prods.*, 511 U.S. 244, 274 (1994); see *ibid.* (describing "consistent practice") (internal quotation marks and bracket omitted); accord *id.* at 292 (Scalia, J., concurring in the judgment) (noting "consistent practice of giving immediate effect to statutes that alter a court's jurisdiction").  The Court reaffirmed that rule just two terms ago.  *Republic of Austria* v. *Altmann*, 541 U.S. 677, 693 (2004) (noting that in *Landgraf*, "we sanctioned the application to all pending and future cases of 'inter-

---

[4]  The 1868 Act provided "[t]hat so much of the act approved February [5, 1867], * * * as authorizes an appeal from the judgment of the circuit court to the Supreme Court of the United States, or the exercise of any such jurisdiction by said Supreme Court on appeals which have been or may hereafter be taken, be, and the same is hereby repealed."  Act of Mar. 27, 1868, ch. 34, § 2, 15 Stat. 44.

11

vening' statutes that merely 'confe[r] or ous[t] jurisdiction'") (quoting *Landgraf*, 511 U.S. at 274).  As the Court has explained, "jurisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties.'"  *Landgraf*, 511 U.S. at 274 (quoting *Republic Nat'l Bank* v. *United States*, 506 U.S. 80, 100 (1992) (Thomas, J., concurring)).  In addition, such statutes "usually 'take[] away no substantive right but simply change[] the tribunal that is to hear the case.'"  *Ibid.* (quoting *Hallowell* v. *Commons*, 239 U.S. 506, 508-509 (1916)).  See *Hughes Aircraft Co.* v. *United States ex rel. Schumer*, 520 U.S. 939, 951 (1997).

Because statutes removing jurisdiction presumptively apply to pending cases, Congress must expressly reserve pending cases to preserve the federal courts' jurisdiction over them.  As the Court put it in *Bruner* v. *United States*, 343 U.S. 112 (1952), the "rule" that "has been adhered to consistently by this Court" is "that, when a law conferring jurisdiction is repealed without any reservation as to pending cases, all cases fall with the law."  *Id.* at 116-117 & n.8 (citing *McCardle* and other cases).  That is true no matter how far the pending litigation has progressed.  *Bruner* involved a statute that was enacted after the Court had granted certiorari in the case and repealed federal district court jurisdiction over certain Tucker Act claims.  The Court held that, "[a]bsent such a reservation [as to pending cases]," the district court lacked jurisdiction over the plaintiff's claim "even though the District Court had jurisdiction * * * when petitioner's action was brought."  *Id.* at 115. Accordingly, the Court concluded that the case should be dismissed for want of jurisdiction.  *Id.* at 117.

Numerous other cases are to the same effect.  See *Gallardo* v. *Santini Fertilizer Co.*, 275 U.S. 62, 63 (1927)

12

(Holmes, J.) (ordering that suit brought to enjoin the collection of taxes in Puerto Rico "be dismissed for want of jurisdiction" because, after the district court issued an injunction, Congress passed a law "that took away the jurisdiction of the District Court in this class of cases"); *Hallowell*, 239 U.S. at 508-509 (Holmes, J.) (affirming dismissal of action seeking to establish equitable title to decedent's property "for want of jurisdiction" because, while the action was pending, Congress enacted law that "made [the Secretary of the Interior's] jurisdiction exclusive in terms" and "made no exception for pending litigation"); *Sherman* v. *Grinnell*, 123 U.S. 679, 680 (1887) (dismissing writ for lack of jurisdiction based on law that repealed Court's jurisdiction to review pre-repeal circuit court order remanding case to state court); *Insurance Co.* v. *Ritchie*, 72 U.S. (5 Wall.) 541, 544-545 (1867) (dismissing appeal for want of jurisdiction because statute eliminated jurisdictional basis for underlying suit)*; see also Assessors* v. *Osbornes*, 76 U.S. (9 Wall.) 567, 575 (1870) ("[I]nasmuch as the [jurisdiction] repealing act contained no saving clause, all pending actions fell, as the jurisdiction depended entirely upon the act of Congress.").[5]

Congress "expects its statutes to be read in conformity with this Court's precedents."    *United States* v.

---

[5] In *Santos* v. *Territory of Guam*, No. 03-70472, 2005 WL 3579022 (Jan. 3, 2006), the Ninth Circuit held that, under *Bruner* and *McCardle*, it lacked jurisdiction to consider a petition from the Guam Supreme Court over which it had previously asserted jurisdiction because Congress passed a law withdrawing its jurisdiction while the case was pending.  See *id.* at *4 (Wallace, J., concurring) ("Because there was no 'reservation as to pending cases' in the statute at issue here, we lack jurisdiction over the present appeal.") (quoting *Bruner*, 343 U.S. at 116).

13

*Wells*, 519 U.S. 482, 495 (1997); see *North Star Steel Co.* v. *Thomas*, 515 U.S. 29, 34 (1995). Accordingly, because the relevant provision of the Detainee Treatment Act does not contain any reservation saving pending cases, "all cases fall with the law." *Bruner*, 343 U.S. at 116-117. That conclusion is underscored by the fact that the Act explicitly provides—without reservation—that it "shall take effect on the date of the enactment." DTA § 1005(h)(1), 119 Stat. 2743. Because subject-matter jurisdiction must subsist throughout the litigation, that language effects an immediate elimination of jurisdiction.[6]

In addition, Congress not only declined to include a reservation saving pending cases, but it expressly provided that the exclusive procedures established by the Act for review of challenges to completed CSRTs and military commission trials apply to cases "pending on or after" the Act's enactment. § 1005(h)(2), 119 Stat. 2743. Thus, Congress made clear that the federal courts no longer have jurisdiction over actions filed on behalf of Guantanamo detainees, and it reinforced that result by providing that, without regard to whether an action is "pending on or after" the date of enactment, the exclusive review procedures in Section 1005(e)(2) and (3) provide the only avenue for judicial relief.[7]

---

[6] Whether Section 1005(h)(1) is construed to eliminate this Court's appellate jurisdiction or the district court's jurisdiction over the action (or both), it is appropriate to dismiss the petition for want of jurisdiction. See, *e.g.*, *Ritchie*, 72 U.S. (5 Wall.) at 544-545. In the alternative, the Court could vacate and remand with instructions to the lower courts to dismiss the action. See, *e.g.*, *Gallardo*, 275 U.S. at 63-64.

[7] Relying on legislative history, petitioner contends (05-790 Pet. for Extraordinary Relief 6-7) that Congress did not intend to "interfere with *this* case." Because the statute's jurisdiction-ousting provision

14

2.  Several other considerations support the conclusion that follows from a plain reading of the statute and the Court's uniform practice of construing provisions removing jurisdiction to apply to pending cases absent an express reservation by Congress.

First, application of the jurisdictional provision to pending cases does not involve any retroactive application of a statute.  Because the courts must have jurisdiction throughout the litigation, a change in jurisdiction that takes effect after an action has been filed should be understood, not as undoing past judicial action in the case, but regulating the courts' authority to act prospectively in the case.  See *Landgraf*, 511 U.S. at 293 (Scalia, J., concurring in the judgment).  That is particularly true in a case like this that involves prospective relief. As this Court recognized in *Landgraf*, "[w]hen the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive."  511 U.S. at 273; *id.* at 293 (Scalia, J., con-

---

unambiguously applies to pending cases, there is no need to "turn to the more controversial realm of legislative history."  *Lamie* v. *United States Trustee*, 540 U.S. 526, 536 (2004).  In any event, legislative history supports the conclusion that Congress was aware that the Act's jurisdiction-ousting rule would extend to pending cases, including this case.  See, *e.g.*, 151 Cong. Rec. S14,263 (daily ed. Dec. 21, 2005) (statement of co-sponsor Sen. Kyl) ("The courts' rule of construction for these types of statutes is that legislation ousting the courts of jurisdiction is applied to pending cases.  It has to.  We're not just changing the law governing the action.  We are eliminating the forum in which that action can be heard."); *id.* at S14,264 (statement of Sen. Kyl) ("[T]he court should dismiss Hamdan for want of jurisdiction.  That is what they did in Ex Parte McCardle.  * * *  I think that a majority of the court would do the right thing—to send Hamdan back to the military commission, and then allow him to appeal pursuant to section [1005]."). And the statements of Senator Levin or others quoted by petitioner can in no way alter the effect of the text duly enacted by Congress.

15

curring in the judgment) ("Courts traditionally withhold requested injunctions that are not authorized by then-current law, even if they were authorized at the time suit commenced and at the time the primary conduct sought to be enjoined was first engaged in."). This Court has recognized and applied that principle in several cases. See, *e.g.*, *American Steel Foundries* v. *Tri-City Cent. Trades Council*, 257 U.S. 184 (1921); *Duplex Printing Press Co.* v. *Deering*, 254 U.S. 443, 464 (1921). In light of Congress's elimination of the District Court's jurisdiction, there is no basis for that court's injunctive order to have any prospective effect.

Second, at the same time that it repealed existing habeas jurisdiction over claims filed on behalf of Guantanamo detainees, Congress created a special procedure for bringing later challenges to completed military commission proceedings exclusively in the District of Columbia Circuit. That reality both ameliorates the effect of removing jurisdiction and underscores the appropriateness of applying the statute to pending cases. Congress has not barred military commission defendants such as petitioner from seeking *any* federal forum; rather, the Act requires them to await a final decision from the military commission and vests exclusive jurisdiction in the District of Columbia Circuit to consider challenges to such a decision. DTA § 1005(e)(3)(A), 119 Stat. 2743; see *Landgraf*, 511 U.S. at 292-293 (Scalia, J., concurring in the judgment) (noting that rule applying jurisdictional provisions immediately to pending cases applies even though "[a] jurisdictional rule can deny a litigant a forum for his claim entirely").[8]

---

[8]   By vesting "exclusive jurisdiction" in the District of Columbia Circuit, Congress has excluded district courts from the review process,

16

Congress has thus codified the principle of judicial abstention from military proceedings that this Court had heretofore applied in the absence of specific direction from Congress, see *Schlesinger* v. *Councilman*, 420 U.S. 738 (1975), and channeled review of legal challenges to military commission proceedings through the District of Columbia Circuit.  Particularly in view of the fact that the Act permits petitioner to seek judicial review of a final decision of the military commission, there is no basis to justify the extraordinary step of asserting jurisdiction over his request for pre-trial injunctive relief in the face of the repeal of statutory habeas—or any other—jurisdiction and the creation of an exclusive system of review that requires as a precondition entry of a final military commission judgment.

Third, even if Congress had not divested courts of jurisdiction over petitioner's challenge to his military commission in Section 1005(e)(1), petitioner would nonetheless be required to avail himself of the exclusive review provision established with respect to military commissions in Section 1005(e)(3).  The settled rule is that when Congress creates an exclusive review mechanism, it forecloses a court from asserting jurisdiction under a more general grant of jurisdiction.  For example, in *Thunder Basin Coal Co.* v. *Reich*, 510 U.S. 200 (1994), the Court held that the district court lacked jurisdiction over a pre-enforcement challenge to a decision under the Federal Mine Safety and Health Amendments Act of 1977, 30 U.S.C. 801 *et seq*.  The Court explained that, although that Act was "silent with respect to pre-en-

---

but it has not excluded this Court's eventual participation.  This Court presumably could exercise its certiorari jurisdiction to review a decision of the District of Columbia Circuit concerning the validity of a final decision of a military commission.  See 28 U.S.C. 1254(1).

17

forcement claims," the vesting of exclusive jurisdiction in the court of appeals to review adverse administrative decisions "demonstrates that Congress intended to preclude [pre-enforcement] challenges." 510 U.S. at 208. See also *FCC* v. *ITT World Communications, Inc.*, 466 U.S. 463, 468 (1984) ("[l]itigants may not evade" exclusive review provisions for final agency orders "by requesting the District Court to enjoin action that is the outcome of the agency's order"); cf. 5 U.S.C. 703 ("The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute, or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for * * * writs of * * * habeas corpus.").

Here, Congress has specified that the District of Columbia Circuit has "exclusive jurisdiction" to consider challenges to military commission proceedings and further specified that such challenges may be brought only after a "final decision has been rendered." DTA § 1005(e)(3)(A) and (C)(ii), 119 Stat. 2743. That exclusive review procedure makes clear Congress's intent that judicial review of military commission proceedings should occur only after those proceedings have been completed. Even if the Act omitted Section 1005(e)(1) entirely, therefore, this Court's cases would call upon the courts to give effect to the special review provision created by Section 1005(e)(3) by dismissing pre-trial challenges to military commissions and requiring detainees to invoke the special review procedure created by Congress after careful deliberation for challenging military commission proceedings.

3. Contrary to petitioner's suggestion (05-790 Pet. for Extraordinary Writ at 6-7), Congress's specification

18

that the exclusive review procedures for CSRT and military commission proceedings apply to cases "governed by" those review procedures that are "pending on or after the date of the enactment of this Act" (DTA § 1005(h)(2), 119 Stat. 2743) does not trigger any negative implication that Congress intended to preserve habeas jurisdiction over pending cases and apply Section 1005(e)(1) only to petitions sought to be filed after the date of enactment.

Because Congress was aware of this Court's well-established rule that provisions removing jurisdiction apply to pending cases unless those cases are expressly reserved by a savings clause, Congress had no need to specify that the Act's repeal of habeas jurisdiction applies to pending cases. In contrast to the Court's consistent practice concerning *jurisdictional* provisions, the rules addressing when procedural revisions trigger the presumption against retroactivity have been less clear. See *Landgraf*, 511 U.S. at 277 (clarifying that despite "language suggest[ing] a categorical presumption in favor of application of *all* new rules of law," this Court's decision in *Bradley* v. *School Bd.*, 416 U.S. 696 (1974), did not alter the traditional rule); cf. *Lindh* v. *Murphy*, 521 U.S. 320, 327 (1997). Accordingly, Congress sensibly specified that the new judicial review procedures in Section 1005(e)(2) and (3) would apply to cases "pending on or after" the Act's enactment to avoid any possibility that Section 1005's scope of review provisions, see § 1005(e)(2)(C) and (e)(3)(D), 119 Stat. 2742-2743, could be construed to affect detainees' substantive entitlement

19

to relief (if any) and therefore trigger the presumption against retroactivity.[9]

Particularly in light of the case law addressing when procedural revisions trigger the presumption against retroactivity and the clarity of the rule that provisions eliminating jurisdiction have immediate effect on pending cases, the most natural reading of the statute is that, precisely because Congress was eliminating habeas jurisdiction over all pending cases involving Guantanamo detainees and simultaneously creating special procedures for some eliminated claims, Congress wanted to remove any doubt that the new procedures would apply to cases that are jurisdictionally ousted under Section 1005(e)(1) but present a claim amenable to review under the special procedures created by Section 1005(e)(2) and (3).  Moreover, making clear that the special review provisions apply to pending cases answers the question of what to do with those cases once the threshold jurisdiction-removing provision is given effect.

---

[9]  In *Lindh*, the Court refused to apply to a pending case certain amendments to the habeas corpus statute because those amendments revised prior law "to change standards of proof and persuasion in a way favorable to a State," 521 U.S. at 327; *id*. at 329, and because Congress had not expressly provided that those particular amendments applied to pending cases whereas it had so provided with respect to other amendments.  The provisions in Section 1005(e)(2) and (3) that do more than remove jurisdiction, but that also limit the scope of cognizable claims are more akin to the provisions at issue in *Lindh*.  Thus, Congress was well-served to specify their application to pending cases.  Section 1005(e)(1), by contrast, falls squarely within the class of "'intervening' statutes that merely 'confe[r] or ous[t] jurisdiction'" that this Court has repeatedly held and reaffirmed post-*Lindh* apply "to all pending and future cases."  *Altmann*, 541 U.S. at 693 (quoting *Landgraf*, 511 U.S. at 274).

20

The Act clearly evinces Congress's intent in the wake of this Court's decision in *Rasul* v. *Bush*, 542 U.S. 466 (2004), strictly to limit the judicial review available to aliens detained at Guantanamo during the ongoing conflict.  Reading the statute to permit pending cases to survive would be manifestly at odds with that intent because it would permit hundreds of pending cases —collectively involving the large majority of Guantanamo detainees and countless challenges to the operation of Guantanamo—to proceed.[10]  In addition, such a reading would produce an absurd result because it would require many of those cases to be carved up in order to allow them to proceed under the exclusive review procedure in the District of Columbia Circuit (for claims "governed by" the CSRT review procedure) and general habeas review (for all other claims).  That would only further complicate the detainee litigation by creating a hodgepodge of claims arising in the same case pending in separate courts, would do nothing to address hundreds of detainee cases now pending in district court, and cannot possibly be what Congress intended.

---

[10]  Habeas petitions have been filed on behalf of a purported 600 detainees.  Because more than 100 of those appear to be duplicate filings, and other filings identify names that cannot be matched with actual detainees, the precise number of detainees with cases pending is unknown, although the number is well over 300.  Moreover, a petition was filed (a "John Does 1-570" action) purporting (erroneously, for a number of reasons) to seek relief on behalf of every Guantanamo detainee who has not already filed an action.  Petition for Writ of Habeas Corpus, *John Does 1-570* v. *Bush*, No. 1:05CV00313 (CKK) (D.D.C. Feb. 10, 2005).  These actions collectively have consumed enormous resources and disrupted the operation of Guantanamo during time of war.

21

In any event, the "negative implication" line of argument cannot benefit petitioner. As explained above, even if Congress had not eliminated habeas jurisdiction over pending claims on behalf of Guantanamo detainees, this Court applies the rule that when Congress establishes an exclusive review procedure, the courts cannot exercise jurisdiction under a more general grant. See pp. 16-17, *supra*.

4. Petitioner cannot circumvent the Act's repeal of habeas jurisdiction by seeking to invoke this Court's jurisdiction under the All Writs Act, 28 U.S.C. 1651, or under 28 U.S.C. 2241(a). First, Section 1005(e)(1) by its plain terms eliminates this Court's jurisdiction to consider an original habeas petition just as it does this Court's jurisdiction to consider a habeas petition filed in the district court.[11] Under new 28 U.S.C. 2241(e) (as added by DTA § 1005(e)(1), 119 Stat. 2742), "no court, justice, or judge shall have jurisdiction to hear or consider" any habeas application filed by an alien detained at Guantanamo Bay. Second, Section 1005(e)(1) also plainly withdraws any jurisdiction to consider "any other action"—such as a "writ of mandamus" (05-790 Pet. for Extraordinary Writ at 10)—filed by a Guantanamo detainee that "relate[s] to any aspect of the detention." Thus, petitioner's latest filing runs headlong into the same jurisdictional obstacles that remove this Court's jurisdiction over the writ.

Petitioner's recourse to the All Writs Act fails on numerous other grounds. Even if Section 1005(e)(1) did not by its terms foreclose petitions by Guantanamo de-

---

[11] While common usage calls petitions for habeas corpus filed directly in this Court "original" petitions, the Court's jurisdiction to consider such petitions, for purposes of Article III, is appellate. See *Felker* v. *Turpin*, 518 U.S. 651, 667 n.1 (1996) (Souter, J., concurring).

22

tainees for extraordinary writs, its removal of this
Court's habeas jurisdiction would accomplish the same
result. That is because "the All Writs Act does not, by
its specific terms, provide federal courts with an inde-
pendent grant of jurisdiction." *Syngenta Crop Prot.,
Inc.* v. *Henson*, 537 U.S. 28, 33 (2002) (internal quotation
marks omitted). Rather, the "express terms of the All
Writs Act confine a court to issuing process 'in aid of' its
existing statutory jurisdiction; the Act does not enlarge
that jurisdiction." *Ibid.* (internal quotation marks and
citation omitted). Moreover, even if some other form of
jurisdiction could be established, petitioner falls far
short of meeting the requirements for obtaining extraor-
dinary relief.

Most fundamentally, petitioner cannot demonstrate
that he has "no other adequate means to attain the relief
he desires," *Cheney* v. *United States Dist. Ct.*, 542 U.S.
367, 380 (2004) (citation omitted); see Sup. Ct. R. 20.1,
20.4(a), because Section 1005(e)(3) affords him an ave-
nue for review in the District of Columbia Circuit (and
this Court) after the military commission renders a final
judgment. As this Court has explained, "[a]lthough
th[e] [All Writs] Act empowers federal courts to fashion
extraordinary remedies when the need arises, it does
not authorize them to issue ad hoc writs whenever com-
pliance with statutory procedures appears inconvenient
or less appropriate." *Pennsylvania Bureau of Corr.* v.
*United States Marshals Serv.*, 474 U.S. 34, 43 (1985).
This Court should thus reject petitioner's attempt to
thwart Congress's repeal of habeas jurisdiction by re-
sort to the extraordinary writ.

* * * * *

This Court should dismiss the writ for want of juris-
diction or remand the case with instructions to dismiss.

23

At a minimum, this Court should dismiss the writ as improvidently granted.  By establishing an exclusive review procedure for military commission challenges, Congress has made plain its judgment that judicial review of military commission proceedings should occur only after those proceedings have been completed.

## CONCLUSION

The writ of certiorari should be dismissed for want of jurisdiction or, at a minimum, the writ should be dismissed as improvidently granted.

Respectfully submitted.

PAUL D. CLEMENT
  *Solicitor General*

PETER D. KEISLER
  *Assistant Attorney General*

GREGORY G. GARRE
  *Deputy Solicitor General*

GREGORY G. KATSAS
  *Deputy Assistant Attorney
  General*

JONATHAN L. MARCUS
  *Assistant to the Solicitor
  General*

DOUGLAS N. LETTER
ROBERT M. LOEB
ERIC D. MILLER
  *Attorneys*

JANUARY 2006

# APPENDIX

Pub. L. No. 109-148, 119 Stat. 2680, provides in pertinent part:

## An Act

Making appropriations for the Department
of Defense for the fiscal year ending
September 30, 2006, and for other purposes.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,

## DIVISION A

## DEPARTMENT OF DEFENSE APPROPRIATIONS ACT, 2006

\*   \*   \*   \*   \*

## TITLE X—MATTERS RELATING TO DETAINEES

**SEC. 1001.    SHORT TITLE.**

This title may be cited as the "Detainee Treatment Act of 2005".

**SEC. 1002.    UNIFORM STANDARDS FOR THE INTERROGATION OF PERSONS UNDER THE DETENTION OF THE DEPARTMENT OF DEFENSE.**

(a)  IN GENERAL.—No person in the custody or under the effective control of the Department of Defense or under detention in a Department of Defense facility shall be subject to any treatment or technique of interrogation not authorized by and listed in the United

(1a)

2a

States Army Field Manual on Intelligence Interrogation.

(b) APPLICABILITY.—Subsection (a) shall not apply with respect to any person in the custody or under the effective control of the Department of Defense pursuant to a criminal law or immigration law of the United States.

(c) CONSTRUCTION.—Nothing in this section shall be construed to affect the rights under the United States Constitution of any person in the custody or under the physical jurisdiction of the United States.

SEC. 1003.   PROHIBITION ON CRUEL, INHUMAN, OR DE-GRADING TREATMENT OR PUNISHMENT OF PERSONS UNDER CUSTODY OR CONTROL OF THE UNITED STATES GOVERNMENT.

(a) IN GENERAL.—No individual in the custody or under the physical control of the United States Government, regardless of nationality or physical location, shall be subject to cruel, inhuman, or degrading treatment or punishment.

(b) CONSTRUCTION.—Nothing in this section shall be construed to impose any geographical limitation on the applicability of the prohibition against cruel, inhuman, or degrading treatment or punishment under this section.

(c) LIMITATION ON SUPERSEDURE.—The provisions of this section shall not be superseded, except by a provision of law enacted after the date of the enactment of this Act which specifically repeals, modifies, or supersedes the provisions of this section.

3a

(d) CRUEL, INHUMAN, OR DEGRADING TREATMENT OR PUNISHMENT DEFINED.—In this section, the term "cruel, inhuman, or degrading treatment or punishment" means the cruel, unusual, and inhumane treatment or punishment prohibited by the Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States, as defined in the United States Reservations, Declarations and Understandings to the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment done at New York, December 10, 1984.

SEC. 1004.     PROTECTION OF UNITED STATES GOVERN-MENT PERSONNEL ENGAGED IN AUTHO-RIZED INTERROGATIONS.

(a) PROTECTION OF UNITED STATES GOVERNMENT PERSONNEL.—In any civil action or criminal prosecution against an officer, employee, member of the Armed Forces, or other agent of the United States Government who is a United States person, arising out of the officer, employee, member of the Armed Forces, or other agent's engaging in specific operational practices, that involve detention and interrogation of aliens who the President or his designees have determined are believed to be engaged in or associated with international terrorist activity that poses a serious, continuing threat to the United States, its interests, or its allies, and that were officially authorized and determined to be lawful at the time that they were conducted, it shall be a defense that such officer, employee, member of the Armed Forces, or other agent did not know that the practices were unlawful and a person of ordinary sense and understanding would not know the practices were unlawful. Good faith

4a

reliance on advice of counsel should be an important factor, among others, to consider in assessing whether a person of ordinary sense and understanding would have known the practices to be unlawful. Nothing in this section shall be construed to limit or extinguish any defense or protection otherwise available to any person or entity from suit, civil or criminal liability, or damages, or to provide immunity from prosecution for any criminal offense by the proper authorities.

(b) COUNSEL.—The United States Government may provide or employ counsel, and pay counsel fees, court costs, bail, and other expenses incident to the representation of an officer, employee, member of the Armed Forces, or other agent described in subsection (a), with respect to any civil action or criminal prosecution arising out of practices described in that subsection, under the same conditions, and to the same extent, to which such services and payments are authorized under section 1037 of title 10, United States Code.

**SEC. 1005.     PROCEDURES FOR STATUS REVIEW OF DETAINEES OUTSIDE THE UNITED STATES.**

(a) SUBMITTAL OF PROCEDURES FOR STATUS REVIEW OF DETAINEES AT GUANTANAMO BAY, CUBA, AND IN AFGHANISTAN AND IRAQ.—

(1) IN GENERAL.—Not later than 180 days after the date of the enactment of this Act, the Secretary of Defense shall submit to the Committee on Armed Services and the Committee on the Judiciary of the Senate and the Committee on Armed Services and the Committee on the Judiciary of the House of Representatives a report setting forth—

5a

(A) the procedures of the Combatant Status Review Tribunals and the Administrative Review Boards established by direction of the Secretary of Defense that are in operation at Guantanamo Bay, Cuba, for determining the status of the detainees held at Guantanamo Bay or to provide an annual review to determine the need to continue to detain an alien who is a detainee; and

(B) the procedures in operation in Afghanistan and Iraq for a determination of the status of aliens detained in the custody or under the physical control of the Department of Defense in those countries.

(2) DESIGNATED CIVILIAN OFFICIAL.—The procedures submitted to Congress pursuant to paragraph (1)(A) shall ensure that the official of the Department of Defense who is designated by the President or Secretary of Defense to be the final review authority within the Department of Defense with respect to decisions of any such tribunal or board (referred to as the "Designated Civilian Official") shall be a civilian officer of the Department of Defense holding an office to which appointments are required by law to be made by the President, by and with the advice and consent of the Senate.

(3) CONSIDERATION OF NEW EVIDENCE.—The procedures submitted under paragraph (1)(A) shall provide for periodic review of any new evidence that may become available relating to the enemy combatant status of a detainee.

(b) CONSIDERATION OF STATEMENTS DERIVED WITH COERCION.—

6a

(1) ASSESSMENT.—The procedures submitted to Congress pursuant to subsection (a)(1)(A) shall ensure that a Combatant Status Review Tribunal or Administrative Review Board, or any similar or successor administrative tribunal or board, in making a determination of status or disposition of any detainee under such procedures, shall, to the extent practicable, assess—

(A) whether any statement derived from or relating to such detainee was obtained as a result of coercion; and

(B) the probative value (if any) of any such statement.

(2) APPLICABILITY.—Paragraph (1) applies with respect to any proceeding beginning on or after the date of the enactment of this Act.

(c) REPORT ON MODIFICATION OF PROCEDURES.—The Secretary of Defense shall submit to the committees specified in subsection (a)(1) a report on any modification of the procedures submitted under subsection (a). Any such report shall be submitted not later than 60 days before the date on which such modification goes into effect.

(d) ANNUAL REPORT.—

(1) REPORT REQUIRED.—The Secretary of Defense shall submit to Congress an annual report on the annual review process for aliens in the custody of the Department of Defense outside the United States. Each such report shall be submitted in unclassified form, with a classified annex, if necessary.

7a

The report shall be submitted not later than December 31 each year.

(2) ELEMENTS OF REPORT.—Each such report shall include the following with respect to the year covered by the report:

(A) The number of detainees whose status was reviewed.

(B) The procedures used at each location.

(e) JUDICIAL REVIEW OF DETENTION OF ENEMY COMBATANTS.—

(1) IN GENERAL.—Section 2241 of title 28, United States Code, is amended by adding at the end the following:

"(e) Except as provided in section 1005 of the Detainee Treatment Act of 2005, no court, justice, or judge shall have jurisdiction to hear or consider—

"(1) an application for a writ of habeas corpus filed by or on behalf of an alien detained by the Department of Defense at Guantanamo Bay, Cuba; or

"(2) any other action against the United States or its agents relating to any aspect of the detention by the Department of Defense of an alien at Guantanamo Bay, Cuba, who—

"(A) is currently in military custody; or

"(B) has been determined by the United States Court of Appeals for the District of Columbia Circuit in accordance with the procedures set forth in section 1005(e) of the Detainee Treatment Act of 2005 to have been properly detained as an enemy combatant.".

8a

(2)  REVIEW OF DECISIONS OF COMBATANT STA-
TUS REVIEW TRIBUNALS OF PROPRIETY OF DETEN-
TION.—

(A)  IN GENERAL.—Subject to subpara-
graphs (B), (C), and (D), the United States Court
of Appeals for the District of Columbia Circuit
shall have exclusive jurisdiction to determine the
validity of any final decision of a Combatant Sta-
tus Review Tribunal that an alien is properly de-
tained as an enemy combatant.

(B)  LIMITATION ON CLAIMS.—The jurisdic-
tion of the United States Court of Appeals for the
District of Columbia Circuit under this para-
graph shall be limited to claims brought by or on
behalf of an alien—

(i)  who is, at the time a request for
review by such court is filed, detained by
the Department of Defense at Guantanamo
Bay, Cuba; and

(ii)  for whom a Combatant Status Re-
view Tribunal has been conducted, pursu-
ant to applicable procedures specified by
the Secretary of Defense.

(C)  SCOPE OF REVIEW.—The jurisdiction of
the United States Court of Appeals for the Dis-
trict of Columbia Circuit on any claims with re-
spect to an alien under this paragraph shall be
limited to the consideration of—

(i)  whether the status determination of
the Combatant Status Review Tribunal
with regard to such alien was consistent

9a

with the standards and procedures speci-
fied by the Secretary of Defense for Com-
batant Status Review Tribunals (including
the requirement that the conclusion of the
Tribunal be supported by a preponderance
of the evidence and allowing a rebuttable
presumption in favor of the Government's
evidence); and

(ii) to the extent the Constitution and
laws of the United States are applicable,
whether the use of such standards and pro-
cedures to make the determination is con-
sistent with the Constitution and laws of
the United States.

(D) TERMINATION ON RELEASE FROM CUS-
TODY.—The jurisdiction of the United States
Court of Appeals for the District of Columbia
Circuit with respect to the claims of an alien un-
der this paragraph shall cease upon the release of
such alien from the custody of the Department of
Defense.

(3) REVIEW OF FINAL DECISIONS OF MILITARY
COMMISSIONS.—

(A) IN GENERAL.—Subject to subpara-
graphs (B), (C), and (D), the United States Court
of Appeals for the District of Columbia Circuit
shall have exclusive jurisdiction to determine the
validity of any final decision rendered pursuant to
Military Commission Order No. 1, dated August
31, 2005 (or any successor military order).

(B) GRANT OF REVIEW.—Review under this
paragraph—

10a

(i)  with respect to a capital case or a case in which the alien was sentenced to a term of imprisonment of 10 years or more, shall be as of right; or

(ii)  with respect to any other case, shall be at the discretion of the United States Court of Appeals for the District of Columbia Circuit.

(C)  LIMITATION ON APPEALS.—The jurisdiction of the United States Court of Appeals for the District of Columbia Circuit under this paragraph shall be limited to an appeal brought by or on behalf of an alien—

(i)  who was, at the time of the proceedings pursuant to the military order referred to in subparagraph (A), detained by the Department of Defense at Guantanamo Bay, Cuba; and

(ii)  for whom a final decision has been rendered pursuant to such military order.

(D)  SCOPE OF REVIEW.—The jurisdiction of the United States Court of Appeals for the District of Columbia Circuit on an appeal of a final decision with respect to an alien under this paragraph shall be limited to the consideration of—

(i)  whether the final decision was consistent with the standards and procedures specified in the military order referred to in subparagraph (A); and

11a

   (ii)  to the extent the Constitution and laws of the United States are applicable, whether the use of such standards and procedures to reach the final decision is consistent with the Constitution and laws of the United States.

(4) RESPONDENT.—The Secretary of Defense shall be the named respondent in any appeal to the United States Court of Appeals for the District of Columbia Circuit under this subsection.

(f) CONSTRUCTION.—Nothing in this section shall be construed to confer any constitutional right on an alien detained as an enemy combatant outside the United States.

(g) UNITED STATES DEFINED.—For purposes of this section, the term "United States", when used in a geographic sense, is as defined in section 101(a)(38) of the Immigration and Nationality Act and, in particular, does not include the United States Naval Station, Guantanamo Bay, Cuba.

(h) EFFECTIVE DATE.—

(1) IN GENERAL.—This section shall take effect on the date of the enactment of this Act.

(2) REVIEW OF COMBATANT STATUS TRIBUNAL AND MILITARY COMMISSION DECISIONS.—Paragraphs (2) and (3) of subsection (e) shall apply with respect to any claim whose review is governed by one of such paragraphs and that is pending on or after the date of the enactment of this Act.

\*　\*　\*　\*　\*