# EXHIBIT 3

No. 05-184

# In the Supreme Court of the United States

SALIM AHMED HAMDAN, PETITIONER

*v.*

DONALD H. RUMSFELD,
SECRETARY OF DEFENSE, ET AL.

*ON WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT*

**REPLY BRIEF IN SUPPORT OF RESPONDENTS'
MOTION TO DISMISS FOR LACK OF JURISDICTION**

PAUL D. CLEMENT
*Solicitor General
Counsel of Record*
*Department of Justice
Washington, D.C. 20530-0001
(202) 514-2217*

**TABLE OF CONTENTS**

Page

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. The DTA eliminates the power of the courts to hear
pending actions, such as petitioner's, brought on
behalf of Guantanamo detainees . . . . . . . . . . . . . . . . . . . . 2

    A.  The DTA does not support petitioner's
"inference" that Congress intended to
preserve habeas jurisdiction over pending
cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.  The legislative history of the DTA cannot
preserve the jurisdiction that the plain
language of the DTA removed . . . . . . . . . . . . . . . . . 7

    C.  Application of the DTA's jurisdiction-
removing provision to pending cases does not
have retroactive effect . . . . . . . . . . . . . . . . . . . . . . . 19

    D.  The doctrines of abstention and exclusive
review also call for dismissal of petitioner's
case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

II. Neither petitioner's certiorari nor his original
habeas action allow him to circumvent the DTA . . 15

III. The DTA's removal of habeas jurisdiction over
pending cases does not raise any serious con-
stitutional questions . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**TABLE OF AUTHORITIES**

Cases:

    *Braden* v. *30th Judicial Circuit Court*, 410 U.S. 484
(1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

    *Bruner* v. *United States*, 343 U.S. 112 (1952) . . . . . . . 3, 15

(I)

II

Cases—Continued:                                               Page

    *Fisher* v. *Gibson*, 262 F.3d 1135 (10th Cir. 2001),
        cert. denied, 535 U.S. 1030 (2002) ................ 18

    *Gallardo* v. *Santini Fertilizer Co.*, 275 U.S. 62
        (1927) ........................................... 15

    *Hallowell* v. *Commons*, 239 U.S. 506 (1916) .......... 11

    *INS* v. *St. Cyr*, 533 U.S. 289 (2001) ................ 3, 17

    *Insurance Co.* v. *Ritchie*, 72 U.S. (5 Wall.) 541
        (1867) ........................................... 15

    *Johnson* v. *Eisentrager*, 339 U.S. 763
        (1950) ............................... 11, 12, 18, 22

    *LaFontant* v. *INS*, 135 F.3d 158 (D.C. Cir. 1998) ..... 11

    *Landgraf* v. *USI Film Prods.*, 511 U.S. 244
        (1994) ............................. 1, 4, 10, 11, 13

    *Lindh* v. *Murphy*, 521 U.S. 320 (1997) ...... 3, 4, 5, 10, 12

    *Martin* v. *Hadix*, 527 U.S. 343 (1999) ................ 5

    *McCardle, Ex parte*, 74 U.S. (7 Wall.) 506 (1868) ...... 1

    *Quirin, Ex parte*, 317 U.S. 1 (1942) .................. 12

    *Rasul* v. *Bush*, 542 U.S. 466 (2004) .................. 19

    *Ratzlaf* v. *United States*, 510 U.S. 135 (1994) ........ 9

    *Republic of Austria* v. *Altman*, 541 U.S. 677 (2004) .. 1, 9

    *Schlesinger* v. *Councilman*, 420 U.S. 738
        (1975) .................................... 13, 14, 17

    *Swain* v. *Pressley*, 430 U.S. 372 (1977) .............. 17

    *Thunder Basin Coal Co.* v. *Reich*, 510 U.S. 200
        (1994) ...................................... 14, 17

    *United States* v. *Hayman*, 342 U.S. 205 (1952) ....... 18

    *United States* v. *Verdugo-Urquidez*, 494 U.S. 259
        (1990) ........................................... 19

    *Yerger, Ex parte*, 75 U.S. (8 Wall.) 85 (1869) ...... 15, 16

III

Case—Continued:                                           Page

    *Zadvydas* v. *Davis*, 533 U.S. 678 (2001) . . . . . . . . . . . . . .  19

Constitution and statutes:

  U.S. Const.:

    Art. I, § 9, Cl. 2 (Suspension Clause)  . . . . . . . . . . . . .  17

    Art. III, § 2, C. 2 (Exceptions Clause)  . . . . . . . . . . . .  17

    Amend.  IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

    Amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18, 19

  Administrative Procedure Act, 5 U.S.C.

    701(b)(1)(F)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

  Antiterrorism and Effective Death Penalty Act of

    1996, Pub. L. No. 104-132, 110 Stat. 1214  . . . . . . . . .  3

    110 Stat. 1214 (Ch. 153)  . . . . . . . . . . . . . . . . . . . . .  3, 4

    110 Stat. 1221 (Ch. 154)  . . . . . . . . . . . . . . . . . . . . . .  3

  Detainee Treatment Act of 2005, Pub. L. No. 109-

    148, Div. A. Tit. X, 119 Stat. 2739 . . . . . . . . . . . . . . . .  1

    § 1005, 119 Stat. 2740  . . . . . . . . . . . . . . . . . . . . . . .  15

    § 1005(b)(2), 119 Stat. 2742  . . . . . . . . . . . . . . . . . . .  6

    § 1005(e), 119 Stat. 2742  . . . . . . . . . . . . . . . . . . .  6, 12

    § 1005(e)(1), 119 Stat. 2742  . . . . . . . . . . . . . . . *passim*

    § 1005(e)(2), 119 Stat. 2742  . . . . .  2, 3, 4, 6, 15, 17, 19

    § 1005(e)(3), 119 Stat. 2742  . . . . . . . . . . . . . . . *passim*

    § 1005(e)(3)(C)(ii), 119 Stat. 2743  . . . . . . . . . . . . .  13

    § 1005(e)(3)(D)(ii), 119 Stat. 2743  . . . . . . . . . . .  10, 18

    § 1005(h)(1), 119 Stat. 2743  . . . . . . . . . . . . . . . .  4, 6

    § 1005(h)(2), 119 Stat. 2743  . . . . . . . . . . . . .  4, 5, 6, 13

    § 1005(g), 119 Stat. 2743  . . . . . . . . . . . . . . . . . . . .  19

IV

Statutes—Continued:                                    Page

National Defense Authorization Act for Fiscal Year
   2005, Pub. L. No. 109-163, Div. A, Tit. XIV,
   § 1405(e)(1), 119 Stat. 3477 . . . . . . . . . . . . . . . . . . . . . . .  1
28 U.S.C. 1254(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
28 U.S.C. 2241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 18

Miscellaneous:

151 Cong. Rec. (daily ed.):
   p. S12,655 (Nov. 10, 2005) . . . . . . . . . . . . . . . . . . . . . . . 8
   p. S12,754 (Nov. 14, 2005) . . . . . . . . . . . . . . . . . . . . . . . 8
   p. S12,756 (Nov. 14, 2005) . . . . . . . . . . . . . . . . . . . . . . . 8
   p. S12,801 (Nov. 15, 2001) . . . . . . . . . . . . . . . . . . . . . . . 9
   p. S14,263 ( Dec. 21, 2005) . . . . . . . . . . . . . . . . . . . . . . . 6
   P. S14,268 ( Dec. 21, 2005) . . . . . . . . . . . . . . . . . . . . . . . 16

**REPLY BRIEF IN SUPPORT OF RESPONDENTS' MOTION
TO DISMISS FOR LACK OF JURISDICTION**

### INTRODUCTION

Petitioner's response fails to account for the plain import of the text enacted by Congress and this Court's precedents. In clear and unmistakable terms, Congress eliminated the power of the federal courts to "hear or consider" habeas petitions and any other actions by aliens such as petitioner detained by the United States at Guantanamo Bay, Cuba. Detainee Treatment Act of 2005 (the DTA or Act), Pub. L. No. 109-148, Div. A., Tit. X, § 1005(e)(1), 119 Stat. 2742.[1] As Congress is presumed to be aware, the settled rule is that statutes that remove jurisdiction apply immediately to eliminate jurisdiction over pending cases unless jurisdiction over such cases is expressly preserved. See *Republic of Austria* v. *Altman*, 541 U.S. 677, 693 (2004); *Landgraf* v. *USI Film Prods.*, 511 U.S. 244, 274 (1994); *id.* at 292 (Scalia, J., concurring in the judgment). Congress did not expressly preserve petitioner's action, or any other pending action brought on behalf of Guantanamo detainees. And petitioner has supplied no basis for this Court to disregard its precedents and override the statutory text by permitting this pre-trial challenge to petitioner's military commission to proceed.

Despite petitioner's extended rhetoric, that result is neither unusual nor unconstitutional. This Court has repeatedly given effect to such jurisdiction-removing provisions and long ago recognized that "judicial duty is not less fitly performed by declining ungranted jurisdiction than in exercising firmly that which the Constitution and the laws confer." *Ex parte*

---

[1]   Identical provisions are included in the National Defense Authorization Act for Fiscal Year 2005, Pub. L. No. 109-163, Div. A, Tit. XIV, § 1405(e)(1), 119 Stat. 3477.

(1)

2

*McCardle*, 74 U.S. (7 Wall.) 506, 515 (1868).  What is more, performing that duty in this case does not deprive petitioner of an opportunity for judicial review.  At the same time that Congress removed the power of the courts to entertain pending actions filed on behalf of Guantanamo detainees, it created an exclusive procedure for challenging adverse military commission or Combatant Status Review Tribunal (CSRT) determinations.  Accordingly, the DTA amounts to a statutory abstention requirement for detainees like petitioner who face a military commission, such that giving effect to the plain terms of the DTA will terminate only petitioner's *pre-trial* challenge to his military commission.  He may invoke the DTA's exclusive review procedures (and/or challenge any limitations on that review) if he is convicted by a military commission, but his current action must be dismissed.

## ARGUMENT

I.  **THE DTA ELIMINATES THE POWER OF THE COURTS TO HEAR PENDING ACTIONS, SUCH AS PETITIONER'S, BROUGHT ON BEHALF OF GUANTANAMO DETAINEES**

Petitioner's primary argument boils down to the proposition that the DTA has no effect on the numerous pending actions, including his own, filed on behalf of hundreds of Guantanamo detainees and challenging virtually all facets of the operation of Guantanamo.  That contention is directly contradicted by the text and history of the Act, and cannot be squared with the context that Congress confronted.

In plain terms, Section 1005(e)(1) of the Act removed jurisdiction over habeas petitions and any other actions related to detention filed by or on behalf of aliens at Guantanamo, except as provided in subsections (e)(2) and (e)(3), which, in turn, permit challenges only to *final* CSRT and military commission decisions in the District of Columbia Circuit.  See DTA § 1005(e)(2) and (3).  As explained (Gov't Mot. to Dismiss (Gov't Mot.) 9-13), this Court has "consistently" adhered

3

to the rule that jurisdiction-removing provisions apply to pending cases unless those cases are expressly preserved by Congress through a savings clause. *Bruner* v. *United States*, 343 U.S. 112, 116-117 (1952). Applying that settled rule compels the conclusion that the DTA's jurisdiction-removing provision takes immediate effect and removes jurisdiction over pending cases such that, going forward, federal court jurisdiction over Guantanamo detainees would be confined to the "exclusive" review system created by the DTA.[2]

### A. The DTA Does Not Support Petitioner's "Inference" That Congress Intended To Preserve Habeas Jurisdiction Over Pending Cases

Petitioner maintains that the hundreds of Guantanamo detainees with pending actions are entitled to the benefit of *both* the habeas jurisdiction that Congress removed in Section 1005(e)(1) *and* the exclusive review procedure that Congress granted in Section 1005(e)(2) and (3). As a practical matter, that would attribute to Congress an intent to create *more* litigation, not less. Petitioner nonetheless contends (Pet. Opp. 7) that this counterintuitive result is compelled by an *inference* that petitioner draws based on the fact that Congress specified that the exclusive review system applies to pending and future claims. That contention is mistaken.

Petitioner's "inference" theory is grounded on this Court's decision in *Lindh* v. *Murphy*, 521 U.S. 320 (1997). In *Lindh*, the Court held that chapter 153 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was not applicable to pending cases, because chapter 154 of AEDPA, which

---

[2]  Relying on *INS* v. *St. Cyr*, 533 U.S. 289 (2001), petitioner suggests (Pet. Opp. 17-18) that the *Bruner* rule should not apply to the removal of habeas jurisdiction, because *St. Cyr* applied a clear-statement rule in determining whether Congress eliminated habeas review. The DTA, however, expressly provides such a clear statement. See DTA § 1005(e)(1) (expressly amending 28 U.S.C. 2241 to eliminate habeas review).

4

was parallel to chapter 153 in that it too established new standards of review for habeas corpus applications, was made expressly applicable to pending cases while chapter 153 was not. Because both chapters addressed the same subject—"standards affecting entitlement to relief"—the Court reasoned that "[n]othing, * * * but a different intent explains the different treatment." *Lindh*, 521 U.S. at 329. The statutory provisions at issue in this case are fundamentally different from those at issue in *Lindh* for two reasons, and those differences defeat the kind of inference that this Court drew in *Lindh*.

First, unlike *Lindh*, the relevant statutory provisions on which petitioner would base his negative inference address different subjects—Section 1005(e)(1) and (h)(1) remove jurisdiction, while Section 1005(e)(2), (3) and (h)(2) create an exclusive review mechanism and define the nature of that review. When two provisions address the same subject, as in *Lindh*, there may be a basis for drawing a negative inference from the omission of language in one of the two provisions. That same inference cannot be drawn when the provisions address different subjects, particularly when one of the provisions removes jurisdiction and implicates the rule of *Bruner*.

Section 1005(e)(1) speaks solely to the power of the courts and withdraws their pre-existing jurisdiction over pending cases. Because that section is purely a jurisdiction-removing provision, no difficult questions about retroactivity, or the need to resort to inferences, ever arise. This Court has consistently held that jurisdiction-removing provisions apply to pending cases absent a savings clause. Indeed, because of the courts' continuing need to have jurisdiction over a controversy, such provisions have no retroactive application. They apply prospectively and immediately. See *Landgraf*, 511 U.S. at 293 (Scalia, J., concurring in the judgment). Because the law on jurisdiction-removing provisions is clear, Congress had no reason to add special language to ensure the application of

5

Section 1005(e)(1) to pending cases. To the contrary, the burden would have been on Congress to add a savings clause if it had intended to preserve pending cases.

*Martin* v. *Hadix*, 527 U.S. 343 (1999), reinforces the conclusion that petitioner's reliance on *Lindh* is misplaced. In that case, this Court rejected a "negative inference" (*id*. at 356) argument based on *Lindh*. The plaintiff in *Martin* argued that the section of a statute (Section 803) governing the award of attorney's fees should not be applied to pending cases because it lacked language specifying that it applied to pending cases that appeared in a different part of the statute (Section 802) establishing "new standards" limiting the availability of certain remedies. *Id*. at 356. The Court rejected the negative-inference rationale and the relevance of *Lindh* because the provisions at issue addressed different subject matters. Therefore, "there [was] no reason to conclude that if Congress was concerned that § 802 apply to pending cases, it would 'have been just as concerned' that § 803 apply to pending cases." *Id*. at 357 (quoting *Lindh*, 521 U.S. at 329). The same reasoning applies here, *a fortiori*, in light of the clear rule concerning jurisdiction-removing provisions.[3]

Second, petitioner's negative-inference argument fails because it ignores a much more obvious explanation for Section 1005(h)(2)'s reference to pending cases that would not give rise to any negative inference. Congress presumably specified that the exclusive review mechanism would apply to pending and future claims *not* for the farfetched purpose of

---

[3]   Petitioner's "negative inference" rationale also fails to account for other provisions in the DTA, which expressly exclude pending proceedings. Section 1005(b)(2) specifies that the provision imposing certain procedural requirements on CSRTs "applies with respect to any proceeding beginning on or after the date of the enactment of this Act." Rather than indulge dueling negative inferences from explicit language specifying or foreclosing application to pending proceedings, this Court should simply read Section 1005(e)(1) in light of the Court's consistent practice and give it immediate effect.

6

having the courts draw from that a negative inference that the ordinary rule governing jurisdiction-removing provisions should not apply, but to *reinforce* the jurisdiction-removing effect of Section 1005(h)(1) by making clear that pending claims that are amenable to review under the exclusive review system must proceed under the DTA.[4]  Thus, far from demonstrating that Congress sought to *preserve* habeas cases, Section 1005(h)(2) demonstrates that Congress sought to accomplish a relatively seamless transition by *displacing* habeas jurisdiction with DTA-created jurisdiction.[5]

---

[4]  Congress was aware that there are many pending habeas claims raising challenges to the CSRT proceedings, and sought to ensure that jurisdiction would be available under the exclusive review procedures. See, *e.g.*, 151 Cong. Rec. S14,263 (Dec. 21, 2005) (statement of Sen. Graham) ("Obviously, no pending case seeks judicial review in the DC Circuit pursuant to section [1005]. What [Section 1005(h)(2)] means is that, at the same time that the courts like the DC district courts kick these cases out of their courtrooms, they can also tell them where they should go next."); *ibid.* (statement of Sen. Graham) (pending habeas claims challenging detention should "be recast as appeal of the[] CSRT determinations" pursuant to Section 1005(e)); *ibid.* (statement of Sen. Graham) ("if, for example, a habeas action currently is in the D.C. Circuit, that court can simply construe that action as a request for review of the detainee's CSRT pursuant to [Section 1005(e)]").

[5]  The burden of a negative-inference argument—especially petitioner's, which must overcome the clear rule that jurisdiction-removing provisions take immediate effect—is that the inclusion of express language in one section of a statute was intended to create a negative implication, rather than reflecting some other purpose, such as making sure a particular provision applied to pending cases in a cautious, belt-and-suspenders manner.  Obviously, some degree of cautious "belt and suspenders" drafting is reflected in Section 1005(h)(2), because Congress specified the application of subsections (e)(2) and (3) to *future* claims.  Not even petitioner would detect a negative inference that Section 1005(e)(1) does not apply in the future, and it is hard to understand why one half of Congress's reference to pending and future claims creates a negative inference, when the other half does not.  Instead, Congress's cautious approach counsels against drawing any inferences from Section 1005(h)(2).

7

Petitioner's "inference" rationale also produces an absurd result. The upshot of petitioner's argument is that the fact that Congress made the *exclusive* review system expressly applicable to *pending* claims itself compels the conclusion that Congress intended to *preserve* habeas jurisdiction over them. The jurisdiction of the District of Columbia Circuit under the DTA will hardly be "exclusive," however, if the federal courts continue to maintain ordinary habeas jurisdiction over the pending cases involving hundreds of detainees—including, presumably, the appeals filed in such cases. So petitioner's construction of the DTA means that the Act creates an *additional*, not exclusive, means of judicial review. Not even petitioner or his amici suggest that the purpose of the DTA was to *enlarge* the jurisdiction of the federal courts over detainee actions. To the contrary, the common-sense reading of the statute is that Congress sought to address the burgeoning detainee litigation by eliminating habeas jurisdiction with respect to all pending cases, but sought to ameliorate that result by creating an exclusive review procedure that applied to pending (as well as future) claims.

**B. The Legislative History Of The DTA Cannot Preserve The Jurisdiction That The Plain Language Of The DTA Removed**

Petitioner relies heavily (Pet. Opp. 8-12) on a one-sided account of the legislative history of the DTA to avoid the result compelled by the text and the Court's precedents. In particular, petitioner relies on the fact that the text of the original bill specified that the provision removing habeas jurisdiction applied to pending cases, and that Senator Levin co-sponsored an amendment, the Graham-Levin-Kyl amendment (S. Amdt. 2524), that, among other things, eliminated the reference to pending cases.[6] Relying almost exclusively on Sena-

---

[6]  The original Graham-Kyl-Chambliss amendment (S. Amdt. 2515) also contained no provision for review of military commissions and limited

8

tor Levin's own statements, petitioner argues that the only explanation for that change is that Congress decided to insulate pending cases from the elimination of habeas jurisdiction. See Pet. Opp. 8-12. That argument fails.

First, no amount of legislative history—especially legislative history largely generated by a single Senator—can overcome the unambiguous result that follows from the text of the Act enacted by Congress and the settled rule that jurisdiction-removing provisions apply to pending cases absent a savings clause. See Gov't Mot. 13-14 n.7. Second, and in any event, the legislative history is not one-sided as petitioner suggests. The amendment on which petitioner focuses had two other co-sponsors, and those Senators' statements are consistent with the text they proposed. While Senators Graham and Kyl agreed with Senator Levin that their amendment altered the original bill by providing for an exclusive review mechanism to challenge completed military commission determinations, they emphatically did not share Senator Levin's view that their amendment exempted pending cases from the Act's jurisdiction-removing provision. See note 7, *infra*; Gov't Mot. 13-14 n.7.

Petitioner seeks to minimize that disagreement by contending (Pet. Opp. 11-12) that Senators Graham and Kyl made their views known only after the legislation was enacted. That is not so.[7] Thus, although the plain text of the Con-

---

challenges to a CSRT decision to claims that the decision was not "consistent with the procedures and standards specified by the Secretary of Defense." See 151 Cong. Rec. S12,655 (Nov. 10, 2005).

[7] Senator Graham made his views clear before the Senate approved the amendment. See 151 Cong. Rec. S12,754 (Nov. 14, 2005) (statement of Sen. Graham) (the Graham-Kyl-Levin amendment "give[]s every enemy combatant, all 500, a chance to go to Federal court, the Circuit Court of Appeals for the District of Columbia"); *ibid*. (statement of Senator Graham) (federal court oversight "will be a one-time deal"); *id*. at S12,756 ("When that [military commission] verdict is rendered, the Federal courts of the United States of America will look at the military action to see if it comports with the Con-

9

statute and the *Bruner* rule of construction render resort to legislative history unnecessary, see, *e.g.*, *Ratzlaf* v. *United States*, 510 U.S. 135, 147-148 (1994), the legislative history itself tells a much different story than the one suggested by petitioner. Moreover, the fact that much of the legislative history relied on by petitioner was generated by a single Senator makes it a particularly suspect basis on which to override the plain import of the text enacted by Congress.

### C. Application Of The DTA's Jurisdiction-Removing Provision To Pending Cases Does Not Have Retroactive Effect

Faced with the longstanding rule that jurisdiction-removing statutes apply to pending cases, petitioner contends (Pet. Opp. 12-19) that the rule is inapplicable because the removal of habeas jurisdiction will have retroactive effect. That is wrong.

"[A]pplication of a new jurisdictional statute to cases filed after its enactment is not 'retroactive' even if the conduct sued upon predates the statute." *Altman*, 541 U.S. at 703 (Scalia, J., concurring). That is because "the purpose of provisions * * * eliminating jurisdiction is to * * * forbid the exercise of judicial power" at "the moment at which that power is sought to be exercised." *Landgraf*, 511 U.S. at 293 (Scalia, J., concurring in the judgment); see *Altman*, 541 U.S. at 697 n. 17 (in assessing claim of retroactive effect, the Court must look to "the relevant activity that the rule regulates"); *id.* at 722 (Kennedy, J., dissenting) ("[I]f the [Foreign Sovereign Immunities Act] did not create new jurisdiction—including where it in fact stripped previously existing jurisdiction from the courts—we may apply its statutory terms without

---

stitution."); *id.* at S12,801 (Nov. 15, 2005) (statement of Sen. Graham) ("This Levin-Graham-Kyl amendment allows every detainee under our control to have their day in court. They are allowed to appeal their convictions if they are tried by military commissions."). Senator Kyl also expressed his views before the DTA was enacted. See Gov't Mot. 13-14 n.7.

10

fear of working any retroactive effect."); *Lindh*, 521 U.S. at 342 n.3 (Rehnquist, C.J., dissenting) ("Although in *Hughes Aircraft Co.* v. *United States ex rel. Schumer*, 520 U.S. 939 (1997), we recently rejected a presumption favoring retroactivity for jurisdiction-*creating* statutes, nothing in *Hughes* disparaged our longstanding practice of applying jurisdiction-*ousting* statutes to pending cases.") (citation omitted). Application of Section 1005(e)(1)'s jurisdiction-removing provision is not retroactive in any respect because that provision, by its terms, applies immediately and prospectively to remove the power of the courts *now*—"the moment at which that power is sought to be exercised" (*Landgraf*, 511 U.S. at 293 (Scalia, J., concurring in the judgment))—to hear or consider pending detainee actions.

Petitioner nevertheless contends that this Court should create an exception to its longstanding rule here because, unlike the jurisdiction-removing statutes that this Court has consistently applied to pending cases, "the DTA purports to strip jurisdiction from *any* court to consider [petitioner's] claim." Pet. Opp. 13. That premise, however, is unfounded. The DTA (Section 1005(e)(3)) permits petitioner to seek judicial review of any adverse final decision by the military commission under the Act's exclusive review procedures.[8]

---

[8]   Petitioner contends (Pet. Opp. 14) that the DTA "preclud[es] numerous constitutional and other claims that could otherwise be made in a traditional habeas petition, including the very claims this Court has granted certiorari to decide." The DTA, however, specifically permits detainees who are convicted by a military commission to challenge whether "the use of [the military commission] standards and procedures to reach the final decision is consistent with the Constitution and laws of the United States" to the extent they are applicable. See DTA § 1005(e)(3)(D)(ii). Thus, while the DTA's elimination of habeas jurisdiction over particular claims provides no basis for refusing to give it immediate effect, petitioner errs in suggesting that he will be unable to advance constitutional and statutory challenges to his military commission in the event he is convicted.

Case 1:05-cv-02348-EGS     Document 9-4     Filed 05/09/2006     Page 17 of 26

11

In any event, even assuming contrary to the plain terms of the DTA that it extinguished all federal jurisdiction over detainee challenges to military commissions, and thereby put Guantanamo detainees on the same footing as foreign enemy fighters detained outside the United States in prior armed conflicts, see *Johnson* v. *Eisentrager*, 339 U.S. 763 (1950), that would provide no basis for departing from application of the longstanding *Bruner* rule. Indeed, as explained (Gov't Mot. 12), in *Hallowell* v. *Commons*, 239 U.S. 506 (1916) (Holmes, J.), this Court applied the same clear rule it applied in *Bruner* to a statute that eliminated federal court jurisdiction entirely and relegated the plaintiff to seeking relief exclusively before the Executive Branch. As Justice Holmes explained, the statute "made [the Secretary's] jurisdiction exclusive in terms, * * * made no exception for pending litigation, but purported to be universal and so to take away the jurisdiction that for a time had been conferred upon the courts of the United States." *Id*. at 508. The Court rejected the contention that the fact that plaintiff brought the suit before the statute was enacted "intensified, strengthened or enlarged the plaintiff's rights." *Id*. at 509. See *LaFontant* v. *INS*, 135 F.3d 158, 164-165 (D.C. Cir. 1998).

Petitioner relegates his discussion of *Hallowell* to footnotes and purports to distinguish it on the ground that it "concerned a reallocation of jurisdiction, and not the divestiture thereof." Pet. Opp. 16 n.12. But petitioner has it backwards. The statute in *Hallowell* called for "a divestiture" of federal court jurisdiction, whereas the DTA calls for "a reallocation * * * thereof." Thus, even if the DTA had relegated petitioner to raising all of his claims exclusively before the Executive Branch (*i.e.*, through a CSRT or military commission), petitioner's position would require the Court to overrule *Hallowell*, something even petitioner does not ask this Court to do. See *Landgraf*, 511 U.S. at 274 (citing *Hallowell* as example of the *Bruner* rule).

12

Petitioner also attempts to distinguish *Hallowell* on the ground (Pet. Opp. 17 n.14) that his alleged "right" not to be tried before his claims are heard is more important than the plaintiff's rights at issue in *Hallowell*. However, petitioner has no right to immunity from military trial either in general or by virtue of his filing a challenge to the lawfulness of the tribunal before the DTA's enactment.[9] Petitioner is a confirmed enemy combatant who is "a member of or affiliated with Al Qaeda" (Pet. App. 2a) detained outside the United States. No decision of this Court supports the notion that a captured alien enemy combatant possesses an absolute immunity from trial for war crimes that vested when he filed a pretrial challenge. To the contrary, this Court has held that "the Constitution does not confer a right of personal security or an immunity from military trial and punishment upon an alien enemy." *Eisentrager*, 339 U.S. at 785. *Ex parte Quirin*, 317 U.S. 1 (1942), on which petitioner relies (Pet. Opp. 14), is not to the contrary. The Court never attempted to enforce an immunity by stopping the commission proceedings at issue in *Quirin*, which had virtually concluded by the time the Court heard the case. See Resp. Br. in Opp. at 15 & n.8 (No. 05-184). The district court injunction at issue—barring the trial of an alien enemy combatant held outside the United States—is unprecedented.

### D. The Doctrines Of Abstention And Exclusive Review Also Call For Dismissal Of Petitioner's Case

The DTA's immediate removal of federal court habeas jurisdiction over actions filed on behalf of Guantanamo detain-

---

[9] Even if such immunity existed, which, as explained in the text, it does not, it is implausible to suggest that petitioner relied on a right to collaterally attack his prosecution for war crimes *before* that prosecution occurred when he engaged in the acts in Afghanistan that form the basis for the military commission Charge. Cf. *Lindh*, 521 U.S. at 342 (Rehnquist, C.J., dissenting) ("[t]he federal habeas proceeding at issue here is, in a sense, tertiary conduct").

13

ees requires dismissal of this action.  The same result is required by application of the doctrine of federal court abstention from military proceedings, see *Schlesinger* v. *Councilman*, 420 U.S. 738 (1975), which Congress has now reinforced and effectively codified by requiring Guantanamo detainees subject to trial by military commission to obtain a "final decision" in order to qualify for the DTA's exclusive review mechanism.  DTA § 1005(e)(3)(C)(ii).  Given that Congress has determined that post-trial review is sufficient to protect any rights Guantanamo detainees may assert under the laws and Constitution of the United States, the Court may also dismiss the writ of certiorari as improvidently granted and thereby give effect to Congress's judgment that any judicial review should await a final adverse decision of a military commission.

The same result may also be reached by application of Section 1005(e)(3), the exclusive review provision for challenges to military commissions.  Petitioner contends (Pet. Opp. 19) that his claims are not textually "governed by" that provision (DTA § 1005(h)(2)), but this Court typically construes exclusive review statutes to preclude claims that are not expressly referenced in the statute to effectuate congressional intent to channel judicial review (even in the absence of a companion provision like Section 1005(e)(1) eliminating jurisdiction over such claims).  See Gov't Mot. 16-17 (citing cases).  Petitioner attempts to distinguish these authorities on the ground that his challenge to the commissions is not governed by the Administrative Procedure Act (APA).  See Pet. Opp. 21 n.19 (citing 5 U.S.C. 701(b)(1)(F)).  But the fact that military commissions are exempt from APA review is no reason to permit petitioner to bypass Congress's exclusive review regime for military commissions.  To the contrary, that fact should counsel in favor of even *greater* judicial restraint when Congress establishes what it refers to as an "exclusive" review mechanism for military commissions, because the APA exemption

14

reflects a legislative choice to *reject* judicial supervision of military commissions.

Petitioner further argues that cases such as *Thunder Basin Coal Co.* v. *Reich*, 510 U.S. 200 (1994), are distinguishable because (1) he has raised claims that are outside the expertise of the military commission; (2) post-trial judicial review is inadequate; and (3) he will suffer irreparable harm from sitting through a trial by a commission that lacks jurisdiction. Pet. Opp. 20-21. First, the claims raised are not outside the expertise of the commission. Many of petitioner's claims, including his "threshold" challenge to the legitimacy of the commission (Pet. Opp. 22), revolve around the proper interpretation of provisions of the Uniform Code of Military Justice, with which the military is undeniably well-versed. Moreover, the panel that will review the commission judgment if petitioner is found guilty is comprised of "some of the most distinguished civilian lawyers in the country," including former and current judges. Pet. App. 39a. Second, as explained above, the exclusive review system will not "foreclose all meaningful judicial review." *Thunder Basin*, 510 U.S. at 212-213. It is true that "review is not guaranteed unless the inmate receives a sentence of more than ten years' imprisonment." Pet. Opp. 13. But even if petitioner received a sentence of 10 years or less, he could still seek review of that sentence in the District of Columbia Circuit and if (as petitioner alleges) review were necessary to avoid any constitutional difficulties, the court of appeals would presumably choose to exercise review. Finally, petitioner will not suffer irreparable harm from sitting through a trial before seeking such judicial review. See *Councilman*, 420 U.S. at 755.

15

## II. NEITHER PETITIONER'S CERTIORARI PETITION NOR HIS ORIGINAL HABEAS ACTION ALLOW HIM TO CIR-CUMVENT THE DTA

Petitioner suggests that this Court may exercise jurisdiction over his habeas case even if it determines that the DTA removed habeas jurisdiction over pending actions, because "nothing in the DTA restricts this Court's traditional certiorari jurisdiction." Pet. Opp. 24. That argument is mistaken. Section 1005(e)(1) unmistakably removes this Court's jurisdiction as well because it explicitly states that, "[e]xcept as provided in section 1005 of the Detainee Treatment Act of 2005, no *court*, *justice*, or judge shall have jurisdiction to hear or consider" claims filed on behalf of Guantanamo detainees such as petitioner. DTA § 1005(e)(1) (emphasis added). Thus, the only jurisdiction that the DTA authorizes with respect to claims filed on behalf of Guantanamo detainees is that exercised pursuant to the exclusive review system that Section 1005(e)(2) and (3) of the DTA establishes. Because petitioner's current action does not satisfy the jurisdictional prerequisites of the exclusive review regime, "no court, justice, or judge" has jurisdiction to "hear or consider it."[10]

Petitioner's reliance on *Ex parte Yerger*, 75 U.S. (8 Wall.) 85 (1869), is misplaced. There, the Court ruled that an 1868

---

[10] In any event, contrary to petitioner's contention (Pet. Opp. 30-31), even if the DTA only removed the lower courts' jurisdiction over actions filed on behalf of Guantanamo detainees, this Court could not continue to exercise jurisdiction and render a decision that would require a district court (which lacks jurisdiction under the DTA) to grant petitioner habeas relief. See, *e.g.*, *Bruner*, 343 U.S. at 116-118 (requiring dismissal of action brought before repeal of district court's jurisdiction); *Gallardo* v. *Santini Fertilizer Co.*, 275 U.S. 62, 63-64 (1927) (ordering dismissal of action for injunctive relief brought before repeal of the district court's jurisdiction to grant such relief); *Insurance Co.* v. *Ritchie*, 72 U.S. (5 Wall.) 541, 544-545 (1867) (dismissing appeal from circuit court for want of jurisdiction because statute prohibiting exercise of circuit court jurisdiction was enacted after suit was brought).

16

statute that withdrew from this Court's appellate jurisdiction the authority to review habeas corpus decisions of lower federal courts was inapplicable by its terms to the Court's original habeas jurisdiction "derived from the Constitution and defined by the act of 1789." *Id.* at 102. The 1868 law's targeted removal of this Court's jurisdiction to review lower court judgments stands in stark contrast to the DTA, which amends 28 U.S.C. 2241 to eliminate all habeas jurisdiction over Guantanamo detainees and authorizes in its place jurisdiction over actions brought by them only to the extent "provided in section 1005." DTA § 1005(e)(1). Accordingly, the DTA, unlike the 1868 law in *Yerger*, removes this Court's jurisdiction to hear petitioner's "original" habeas petition.[11]

Furthermore, petitioner's reading of the DTA would effectively shift the pending detainee litigation from the lower courts to this Court, either by way of certiorari petitions or original petitions for habeas corpus. Nothing in the Act permits that result. See Gov't Mot. 20 n.10.[12]

---

[11] Petitioner misleadingly cites (Pet. Opp. 27) a statement from Senator Kyl to support his contention that the DTA did not remove Supreme Court jurisdiction over petitioner's habeas application. Read in context, Senator Kyl's statement makes clear that the Supreme Court review to which he was referring was review of a decision rendered by the District of Columbia Circuit pursuant to its exclusive DTA jurisdiction. See 151 Cong. Rec. S14268 (Dec. 21, 2005) (statement of Sen. Kyl) (after observing that "[a]ll habeas actions are terminated by [the DTA]," Senator Kyl explains that, with respect to the District of Columbia Circuit's "exclusive jurisdiction," Supreme Court "appellate review" will be available).

[12] Petitioner contends (Pet. Opp. 21 n.19) that if this Court cannot exercise jurisdiction now, it cannot exercise jurisdiction to review a decision by the District of Columbia Circuit issued under the DTA's exclusive review procedures. That is incorrect. This Court cannot exercise jurisdiction now because Section 1005(e)(1) removes habeas jurisdiction over petitioner's existing action and provides that no court—or "justice"—may hear or consider actions filed on behalf of Guantanamo detainees except as provided by the DTA. The only judicial review of military commissions that the DTA authorizes is of "final decisions of military commissions." DTA § 1005(e)(3). While the DTA does not

17

### III.  THE DTA'S REMOVAL OF HABEAS JURISDICTION OVER PENDING CASES DOES NOT RAISE ANY SERIOUS CONSTITUTIONAL QUESTIONS

Petitioner argues (Pet. Opp. 25) that reading the DTA to preclude this Court's review of the judgment below "would raise grave constitutional questions" under the Exceptions Clause because it would deprive this Court of its "supremacy" under Article III.  That is incorrect.  Even assuming petitioner had standing to invoke the Exceptions Clause (but see pp. 18-20, *infra*), respondents have not suggested that the DTA requires this Court to leave the judgment below intact. See Gov't Mot. 3, 13 n.6 (suggesting as an alternative disposition that the Court could vacate and remand with instructions to dismiss the petition).[13]  Because the Court retains the authority to vacate the judgment below, there is no Exceptions Clause issue.  This Court may dispose of the case in any manner consistent with the recognition that the federal courts may no longer exercise jurisdiction over petitioner's habeas case.

Petitioner's Suspension Clause challenge is similarly unavailing.  First, as petitioner acknowledges (Pet. Opp. 37), "the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus."  *Swain* v. *Pressley*, 430 U.S. 372, 381 (1977). See *St. Cyr*, 533 U.S. at 314 & n.38 ("Congress could, without raising

___

expressly call for Supreme Court review of the District of Columbia Circuit's decisions, Section 1005(e)(2) and (3)—unlike Section 1005(e)(1)—do not remove this Court's jurisdiction over such decisions under 28 U.S.C. 1254(1).

[13] This Court should deny petitioner's extravagant request for yet "additional briefing" (Pet. Opp. 5 n.1) on the issue of vacatur of the decision below.  As the statements cited in the text above demonstrate, respondents specifically suggested in their motion to dismiss that the Court could vacate the judgment below if it believes that vacatur is the most appropriate course.

18

any constitutional questions, provide an adequate substitute through the courts of appeals."). While petitioner emphasizes that the DTA's exclusive review procedure is not unlimited, that is not the test. Rather, petitioner must show that the remedy created by Congress is "inadequate" or "ineffective." Because the DTA authorizes petitioner to challenge whether "the use of [military commission] standards and procedures to reach the final decision is consistent with the Constitution and laws of the United States" to the extent they are applicable, DTA § 1005(e)(3)(D)(ii), petitioner cannot meet his "burden of demonstrating inadequacy and ineffectiveness." *Fisher* v. *Gibson*, 262 F.3d 1135, 1145 (10th Cir. 2001), cert. denied, 535 U.S. 1030 (2002). See *United States* v. *Hayman*, 342 U.S. 205, 223 (1952). Moreover, if petitioner is convicted and is subsequently foreclosed by application of the DTA from raising certain claims, the Court could consider his Suspension Clause challenge when the complaint would be ripe. See *ibid*. Awaiting such a challenge would provide a concrete record on which to review petitioner's contention that he has been denied review with respect to particular claims and, in all likelihood, a decision from the District of Columbia Circuit addressing that contention.

Furthermore, as an alien enemy combatant detained outside the United States, petitioner is not entitled to any constitutional protection under the Suspension Clause. In *Eisentrager*, *supra*, the Court held that alien enemy combatants detained outside the United States have no constitutional right to habeas relief, 339 U.S. at 777-781, and no Fifth Amendment rights, *id.* at 781-785. As this Court explained, if the Constitution conferred rights on foreign enemy combatants, "enemy elements * * * could require the American Judiciary to assure them freedoms of speech, press, and assembly as in the First Amendment, right to bear arms as in the Second, security against 'unreasonable' searches and seizures as in the Fourth, as well as rights to jury trial as in the

19

Fifth and Sixth Amendments." *Id.* at 784. Had the Bill of Rights been meant to extend so far, the Court observed, "it could scarcely have failed to excite contemporary comment," yet "[n]ot one word can be cited," and "[n]o decision of this Court supports such a view." *Ibid.*

This Court has repeatedly reaffirmed that holding of *Eisentrager*. Indeed, in *United States* v. *Verdugo-Urquidez*, 494 U.S. 259, 269 (1990), this Court reiterated *Eisentrager*'s "emphatic" rejection of the extension of constitutional protections to nonresident aliens abroad such as petitioner in the course of rejecting the defendant's claim that a search of his Mexican residence violated the Fourth Amendment and the equal protection component of the Fifth Amendment. The Court explained that "[n]ot only are history and case law against [defendant], but as pointed out in [*Eisentrager*], the result of accepting his claim would have significant and deleterious consequences for the United States in conducting activities beyond its boundaries." *Id.* at 273. The Court further observed that because the defendant "is an alien who has had no previous significant voluntary connection with the United States," cases establishing that "aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country," *id.* at 271, "avail him not," *ibid.* See *Zadvydas* v. *Davis*, 533 U.S. 678, 693 (2001) ("It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders."). Those precedents apply with full force to aliens held outside the United States at Guantanamo. See DTA § 1005(g).

*Rasul* v. *Bush*, 542 U.S. 466 (2004), is not to the contrary. In *Rasul*, this Court held that the "statutory predicate" for the Court's holding in *Eisentrager* was "overruled" by this Court's decision in *Braden* v. *30th Judicial Circuit Court*, 410 U.S. 484 (1973). *Id.* at 479; see *id.* at 475 ("The question now

20

before us is whether the *habeas statute* confers a right to judicial review of the legality of Executive detention of aliens [at Guantanamo].") (emphasis added).  The Court did not, however, cast any doubt on *Eisentrager*'s ruling that the *Constitution* does not guarantee aliens held abroad a right to habeas corpus.  See *id.* at 478.

Accordingly, petitioner, who has never entered the United States and who was determined by a CSRT to be an enemy combatant based on his affiliation with al Qaeda, cannot claim the protection of our Constitution.

### CONCLUSION

For the reasons stated above and in respondents' motion to dismiss, this Court should dismiss the writ for want of jurisdiction, vacate and remand with instructions to dismiss the case, or dismiss the writ as improvidently granted.

Respectfully submitted.

PAUL D. CLEMENT
*Solicitor General*

FEBRUARY 2006