UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GHASSAN ABDULLAH AL SHARBI, by his father and next friend, Abdullah Al Sharbi, <br>    Petitioner, <br><br> v. <br><br> GEORGE W. BUSH, President of the United States; DONALD RUMSFELD, United States Secretary of Defense; GORDON R. ENGLAND, Secretary of the United States Navy; JOHN D. ALTENBURG, JR., Appointing Authority for Military Commissions, Department of Defense; Brigadier General JAY HOOD, Commander, Joint Task Force, Guantánamo Bay, Cuba, and Colonel BRICE A. GYURISKO, Commander, Joint Detention Operations Group, Joint Task, Guantánamo Bay, Cuba, <br>    Respondents. | 1:05-cv-2348 EGS |

**PETITIONER GHASSAN ABDULLAH AL-SHARBI'S RESPONSE TO RESPONDENTS' OPPOSITION TO PETITIONER'S MOTION TO ENJOIN MILITARY COMMISSION PROCEEDINGS**

Petitioner responds to Respondents' Opposition [Document No. 9] to his Motion to Enjoin Military Commission Proceedings [Document No. 7].

1. **Respondents' Exhibit 1 Eloquently Demonstrates the Severity of the Injury that a Continuation of the Military Commission Proceedings will Occasion Petitioner.**

While seeking to trivialize the extent of the injury which continued proceedings before a tribunal of dubious and challenged legitimacy will cause Petitioner, Respondents present this Court with an article from the Washington Post describing the proceedings of the Commission

Downs
Rachlin
Martin PLLC

on April 27, 2006, at which Petitioner was present. The article accurately[1] describes several self-incriminating statements made by Petitioner. While Respondents characterize the present Commission proceedings as "preliminary in nature," Resp's Opp. At 3, they have, by their own submission demonstrated just how injurious such "preliminary" proceedings can be to Petitioner.

Petitioner, detained at Guantánamo without charges for over four years, blurted out statements which, taken at face value, can be interpreted as serious admissions against interest. Judge Kollar-Kotelly in *Hicks* and in the cases she cited (*See* Pet. Mot. To Enjoin, Exhibit A [1]) made no distinction based on the particular stage of an illegitimate proceeding in order to find irreparable injury. It makes no difference whether the Commission proceeding is at a preliminary stage or in full bloom. Irreparable injury consists in compulsory submission to an illegitimate tribunal at <u>any</u> stage.

In addition, Respondents err in asserting that the Commission proceedings against Petitioner are "preliminary in nature." The trial calendar recently issued by the Commision (Pet. Mot. To Enjoin, Exhibit E [5]) sets Petitioner's case for the week of May 15th with no limitation of what will occur during that session (or those sessions).

2. **This Court should Refrain from a Dispositive Ruling based on the Detainee Treatment Act.**

Respondents here, as they have done elsewhere, have invoked the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2739 ("DTA"), arguing that the DTA strips this

---

[1] The undersigned was present at that hearing, although not in the capacity of Petitioner's Military Commision counsel. The undersigned confirms the accuracy of the Washington Post's report of his statements.

DOWNS
RACHLIN
MARTIN PLLC                                                                 2

Court of all jurisdiction over Guantánamo detainees. Respondents cite no cases (and none are known to the undersigned) in which a court has acceded to the Government's efforts to preempt the judiciary before the constitutionality and applicability of the DTA has been definitively ruled on by an appellate court. Such efforts by the Government are advanced on the apparent assumption that a District Court will rule needlessly on a critical and potentially-dispositive issue that is already before the D.C. Circuit Court of Appeals in *Al Odah* (*See* Pet. Mot. To Enj., Exhibit B [2]) and raised *sua sponte* by the United States Supreme Court in the oral argument of *Hamdan* on March 28, 2006.

While the Respondents here cannot be faulted for raising the issue, lest it later be deemed to have been waived, it is neither necessary nor desirable that this Court now rule definitively – one way or the other – on the DTA before appellate courts now pondering the issue have pronounced on it.

3.    **The Factual Distinctions in *Hicks*, Urged by Respondents, is Irelevant.**

Repondents argue (Resp's Opp. At 5-6) that the Order in *Hicks* should not control here, because *Hicks* was farther along before the Commission than Petitioner's case. Significantly, Respondents do not contend that Judge Kollar-Kotelly's order was in error – only that the underlying commission proceeding had evolved more fully than Petitioner's case. Respondents are arguing, in effect, that this Court should wait awhile, until Petitioner has had further opportunities to suffer injury, before intervening to stop the proceedings until the Supreme Court has ruled in *Hamdan*.

Judge Kollar-Kotelly's order did not turn on the specific stage of the Commission proceedings in *Hicks*. It is irrational to suggest that an illegitimate proceeding (as such it may

ultimately be judged) should be allowed to carry on until it has advanced beyond what Respondents are pleased to characterize as the "preliminary" stage. Respondents' position is comparable to suggesting that an ill patient should refrain from seeking treatment until his condition becomes critical.

4.  **A Stay of the Military Commission Proceedings Comports with the Posture of this Court in Having Stayed all Guantánamo Habeas Corpus Cases Pending the Decision in *Al Odah*.**

This Judge and others of this Court have sensibly stayed habeas corpus proceedings in essentially all pending cases, in light of the global consideration being given to such cases by the D.C. Circuit Court of Appeals in *Al Odah*. There is little point in a multitude of possibly conflicting rulings issuing from different judges of this Court, when the overall viability of such actions is presently before the D.C. Circuit Court of Appeals. Likewise, it is prudent and sensible to call a halt to Military Commission proceedings – proceedings that may shortly be held to be invalid or otherwise flawed – when that issue is presently with the United States Supreme Court awaiting decision. Respondents optimistically suggest that the Supreme Court "is likely to issue a ruling no later than June, 2006" (Resp's Opp. At 6). One can only hope that Respondents' optimism proves prophetic, as an early resolution of the critical constitutional issues swirling around the military commissions is plainly in the interest of all concerned. If Respondents are correct in their prediction, then the stay/injunction requested here by Petitioner will be short, if the commissions and their present procedures are upheld. If, however, the Supreme Court requires more time than Respondents anticipate to resolve these issues, or if an opinion is issued which requires

significant changes in commission procedure, Petitioner's need of a stay/injunction will be correspondingly all the greater.

Furthermore, the supposedly short interval between now and a Supreme Court decision is quite irrelevant on the issue of Petitioner's injury. We've already seen, thanks to Respondents' own exhibit, how much damage Petitioner can do to himself, even at a preliminary hearing. On the other hand, the short interval between now and a Supreme Court decision predicted by Respondents demonstrates how slight the inconvenience to Respondents will be. Even if Respondents' predictions about the timing of the *Hamdan* decision should prove sanguine, and the time to decision is much greater than they expect, any inconvenience to the Government will be purely logistical. The potential damage to Petitioner, in contrast, is grave.

Burlington, Vermont
May 10, 2006

DOWNS RACHLIN MARTIN PLLC

By: _____
Robert D. Rachlin
199 Main Street
P.O. Box 190
Burlington, VT 05402-0190
Telephone: 802-863-2375
Fax: 802-862-7512

ATTORNEYS FOR PETITIONER
GHASSAN ABDULLAH AL SHARBI

BTV 481127 1