IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

)
GHASSAN ABDULLAH AL SHARBI,          )
  *BY HIS NEXT FRIEND,*               )
  *ABDULLAH AL SHARBI*                )
                                     )
          Petitioner,                )          Civil Action No. 05-CV-2348 (EGS)
                                     )
     v.                              )
                                     )
GEORGE W. BUSH, *et al*.             )
                                     )
          Respondents.               )
_____)

**MOTION TO DISMISS PETITIONER'S HABEAS CASE WITHOUT PREJUDICE
OR TO HOLD THE PETITION IN ABEYANCE PENDING COMPLETION OF
MILITARY COMMISSION PROCEEDINGS**

Petitioner has been criminally charged pursuant to the Military Commissions Act of 2006 (MCA), 10 U.S.C. §§ 948a, *et seq*. A trial in that context [that is under the MCA] would occur before a military commission convened pursuant to an Act of Congress, in which he will be guaranteed an impartial judge and jury, 10 U.S.C. § 949f, the presumption of innocence until proven guilty beyond a reasonable doubt, *id.* § 949*l*, the assistance of defense counsel, *id.* § 949c, the right to be present, *id.* § 949d(b), the right to discovery (including a right to exculpatory evidence), *id.* § 949j, the right to take depositions, *ibid.*, the right to call witnesses, *ibid.*, and a full panoply of other substantive and procedural rights that are carefully described in the MCA. Before trial, an accused is entitled to have the military commission itself make its own independent determination of unlawful enemy combatancy, *see* 10 U.S.C. § 948d, a determination made in the context of the commission's robust, adversarial proceedings. If he is ultimately convicted, petitioner may seek review in the D.C. Circuit, as a matter of right, of the legal and factual bases for the initial unlawful

enemy combatancy determination, and for the conviction itself. *See Khadr v. United States*, 529 F.3d 1112, 1118 (D.C. Cir. 2008). Because petitioner has been charged and is facing the prospect of trial before a military commission, the Court should dismiss his habeas petition without prejudice, or hold it in abeyance pending the completion of military commission proceedings. To do so would prevent interference with the "autonomous military judicial system created by Congress," *New v. Cohen*, 129 F.3d 639, 643 (D.C. Cir. 1997), and would be an efficient use of judicial and party resources at a time when hundreds of Guantanamo habeas petitions must be adjudicated as promptly and efficiently as possible.

Given that petitioner has been criminally charged, there is nothing unusual about requiring him to first exhaust his criminal proceedings before seeking habeas relief. That is the norm in American jurisprudence. *See* 28 U.S.C. § 2254; *Younger v. Harris*, 401 U.S. 37 (1971); *Schlesinger v. Councilman*, 420 U.S. 738 (1975). Moreover, there is some overlap between the issues presented in petitioner's habeas petition and his military commission case—issues that will be fully vetted in his criminal proceedings and on appeal as of right upon any conviction to the D.C. Circuit. As such, just as a habeas court may not properly interfere with ongoing military commission proceedings, *see Hamdan v. Gates*, — F. Supp. 2d —, 2008 WL 2780911 (D.D.C. July 18, 2008), the Court also should properly abstain from consideration of petitioner's habeas case pending resolution of criminal charges before the military commission. Indeed, given the volume of Guantanamo habeas cases pending in the district court, judicial and party resources would be far better spent addressing the cases of petitioners who have not been criminally charged, and whose cases will not be heard in the adversarial system of trials and judicial review specifically authorized by Congress in the Military Commissions Act. The Government, therefore, respectfully requests that petitioner's habeas case

be dismissed without prejudice or held in abeyance pending resolution of the military commission proceedings.[1]

## STATEMENT

On September 11, 2001, Usama Bin Laden and his terrorist network, al Qaeda, operating out of Taliban-controlled Afghanistan, attacked the United States. Nearly three thousand Americans were killed in what was the worst attack on American soil by a foreign aggressor in our nation's history. On September 18, 2001, Congress adopted the Authorization for the Use of Military Force, which authorized the President to use "all necessary and appropriate force against those nations, organizations, or persons he determines planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001." Authorization for Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224 (2001). Within weeks, American forces were deployed in Afghanistan. Al Sharbi is currently detained at the U.S. Naval Station at Guantanamo Bay, Cuba.

In 2006, Congress enacted the MCA, establishing a detailed regime governing the establishment and conduct of military commissions. *See* 10 U.S.C. §§ 948a-950p. The MCA provides for the trial by military commission of unlawful enemy combatants, 10 U.S.C. § 948c, defined in part as any person who "has engaged in hostilities or who has purposefully and materially supported hostilities against the United States . . . who is not a lawful enemy combatant." 10 U.S.C. § 948a(1). A military commission is made up of at least five members who are military officers, 10 U.S.C. §§ 948i, 948m, and is presided over by a military judge, 10 U.S.C. § 948j, the same judges who preside over courts-martial. The defendant is appointed military defense counsel and may also

---

[1]Pursuant to this Court's Rule 7(m), the Government attempted to confer with petitioner's counsel as to petitioner's position regarding the instant motion. The undersigned is unaware that petitioner's counsel responded to the Government's attempt to confer.

retain private civilian counsel. 10 U.S.C. §§ 948k, 949c. The defendant is presumed innocent unless his guilt is established beyond a reasonable doubt. 10 U.S.C. § 949l(c). All military commission proceedings must take place in the presence of the accused unless, after the accused is warned, he persists in conduct that would justify exclusion to ensure the physical safety of individuals or to prevent disruption of the proceedings. 10 U.S.C. § 949d(b), (e).

The defendant has broad appellate rights. 10 U.S.C. § 950b(b). If convicted, the defendant may appeal to the Court of Military Commission Review, an intermediate military court. 10 U.S.C. § 950f. The defendant may next appeal to the D.C. Circuit, 10 U.S.C. § 950g, which has "exclusive jurisdiction to determine the validity of a final judgment rendered by a military commission"; it may review "matters of law" (including the legal sufficiency of the evidence supporting the conviction) and may further consider "whether the final decision was consistent with the standards and procedures specified in this chapter" and with "the Constitution and the laws of the United States." 10 U.S.C. § 950g(a)-(c).

Commission proceedings commence upon the swearing of charges against an accused, notice of those charges to the accused, and referral of those charges to a military commission. *See* 10 U.S.C. § 948q; Manual for Military Commissions, Rule 401(b). In May 2008, charges against petitioner were sworn. Those charges specified two offenses: Conspiracy, §950v(b) (28) and Providing Material Support for Terrorism, §950v(b)(25).[2]

---

[2] A copy of the charge sheet is posted on the DefenseLink information page at http://www.defenselink.mil/news/d20080529Sharbi.pdf, hereinafter referred to as "Charge Sheet." As indicated on the charge sheet, charges have been sworn against petitioner pursuant to Rule 307 of the Rules for Military Commissions found in the Manual for Military Commissions. *See* http://www.defenselink.mil/news/commissionsmanual.html. Under Rule 202(c) of that Manual, "[t]he jurisdiction of a military commission over an individual attaches upon the swearing of charges."

The charges against petitioner were sworn on May 28, 2008.  *See* Charge Sheet.  Those charges specified several offenses, in conjunction with Conspiracy, §950v(b) (28), and Providing Material Support for Terrorism, §950v(b)(25).  *Id*.

The "conspiracy charge" specified that petitioner had entered into an agreement with other members of al Qaeda to commit one or more substantive offenses triable by military commission, and committed several overt acts in support.  *Id*.  Those acts, among others, include conspiring and agreeing with Usama bin Laden, Saif al Adel, Dr. Ayman al Zawahirai (aka "the Doctor"), Muhammad Atef (aka Abu Hafs al Masri), Binyam Mohamed, Noor al Deen, Akrama al Suadani, Jabran Said Bin al Qahatani, Sufyain Barhoumi, and various other members and associates of the al Qaeda organization, known and unknown, to: murder of a protected persons or person, attacking civilians, attacking civilian objects, intentionally causing serious bodily injury, murder in violation of the law of war, destruction of property in violation of the law of war, and providing material support to an international terrorist organization and terrorism.  *Id*. at continuation pages1-2.  The "providing material support for terrorism"  charge specified that petitioner did at various locations in Afghanistan, Pakistan, and elsewhere, in the context of or associated with an armed conflict, intentionally provide material support to al Qaeda, an international terrorist organization engaged in hostilities against the United States, knowing that such organization had engaged or engaged in terrorism.  *Id*. at continuation pages 3-4.

## ARGUMENT

**I.    Because Criminal Charges Are Pending In The Military Commission Context, The Court Should Abstain From Consideration Of Petitioner's Habeas Case At This Time.**

Habeas "is, at its core, an equitable remedy."  *Schlup v. Delo*, 513 U.S. 298, 319 (1995).

Thus, the Supreme Court has "recognized that 'prudential concerns,' such as comity and the orderly administration of criminal justice, may 'require a federal court to forgo the exercise of its habeas corpus power.'" *Munaf v. Geren*, 128 S. Ct. 2207, 2220 (2008) (citations omitted). Indeed, the "orderly administration of criminal justice" usually requires federal courts to decline to consider habeas petitions prior to criminal trial, and instead require a petitioner to exhaust his remedies in the criminal process before seeking habeas relief. The same result is proper in this context, where petitioner has been criminally charged and is awaiting trial in a military commission.

There is, of course, nothing unusual or anomalous about exhaustion requirements in the context of habeas review. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) (the "exhaustion doctrine . . . is now codified at 28 U.S.C. § 2254(b)(1)"); *see also Gusik v. Schilder*, 340 U.S. 128, 131-32 (1950) ("The policy underlying that rule [that a habeas court will not interfere when a state court provides a remedy] is as pertinent to the collateral attack of military judgments as it is to collateral attack of judgments rendered in state courts."). *Boumediene* itself confirmed the well-established requirement that "defendants in courts-martial [must] exhaust their military appeals before proceeding with a federal habeas corpus action." 128 S. Ct. 2229, 2274. Here, because petitioner is awaiting criminal trial, it is entirely appropriate for the Court to require exhaustion of remedies in that criminal setting (which includes a right to appeal to the D.C. Circuit) before entertaining a habeas petition. *See Boumediene*, 128 S. Ct. at 2268 (noting the requirement that state prisoners "exhaust adequate alternative remedies before filing for the writ in federal court" because defendants were provided "with a fair, adversary proceeding").

In *Ex parte Royall*, for example, the Supreme Court established—through the exercise of its own equitable discretion—the principle that federal habeas courts should generally require

exhaustion of the criminal process.  117 U.S. 241, 250-51 (1886).  There, the prisoner, who was awaiting trial on charges that he had violated a Virginia statute, alleged that the statute was unconstitutional; however, the Court held that, based on principles of comity, dismissal was appropriate.  *Id.* at 252 (recognizing "the forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of the other, is a principle of comity, with perhaps no higher sanction than the utility which comes from concord"); *see also Younger*, 401 U.S. at 43-44 (recognizing the "longstanding public policy against federal court interference with state court proceedings" in part because "courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief").

    These same principles apply to the military commission proceedings involving petitioner. Particularly given that the military commissions are duly authorized by Congress and that Congress has specifically prohibited collateral challenges to the military commission process, *see* 10 U.S.C. §§ 950g, 950j, these same considerations of comity apply with even greater force, and require dismissal without prejudice, or holding petitioner's case in abeyance, until the completion of military commission proceedings.  *See Councilman*, 420 U.S. at 738; *New v. Cohen*, 129 F.3d 639, 643 (D.C. Cir. 1997) (federal court must give "due respect to the autonomous military judicial system created by Congress"); *Hamdan*, 2008 WL 2780911, at *7 ("Where both Congress and the President have expressly decided when Article III review is to occur, the courts should be wary of disturbing their judgment.").

    It is well established that the "trial of unlawful combatants, by 'universal agreement and

practice,' are 'important incident[s] of war.'" *Hamdi v. Rumsfeld*, 542 U.S. 507, 518 (2004) (plurality). Thus, the Supreme Court has long recognized not only the authority to hold combatants for the duration of ongoing hostilities, but the established "practice of trying, before military tribunals without a jury, offenses committed by enemy belligerents against the law of war." *Ex parte Quirin*, 317 U.S. 1, 41 (1942). An "important incident to the conduct of war is the adoption of measures by the military command not only to repel and defeat the enemy, but to seize and subject to disciplinary measures those enemies who in their attempt to thwart or impede our military effort have violated the law of war." *Quirin*, 317 U.S. at 28-29. As the Court in *Quirin* explained, "[u]nlawful combatants are * * * subject to capture and detention, but in addition they are subject to trial and punishment by military tribunals for acts which render their belligerency unlawful." 317 U.S. at 31; *see id*. at 29 (asking whether it is "within the constitutional power of the national government to place petitioners upon trial before a military commission" and concluding that it is).

Accordingly, at least as a matter of comity, petitioner must exhaust the criminal process before the military commission, and may take an appeal to the D.C. Circuit upon any conviction to

raise claims relating to the commission proceedings. In the meantime, the Court should properly abstain from reviewing his habeas challenge pending resolution of the criminal proceedings.

## II. The Military Commission Proceedings, With Appeal As Of Right To The D.C. Circuit Provide An Adequate Alternative Forum For Review Of Many Of The Issues Presented By Petitioner.

Some of the issues petitioner will ultimately seek to have this Court address in the habeas context may also be litigated in the military commission context. Rather than have two proceedings running in parallel, *Councilman* teaches that the habeas court should exercise its discretion to allow the criminal proceeding to run its course first. 420 U.S. 738. Indeed, the same principle applies with respect to collateral challenges to state court proceedings—even when those challenges would not necessarily interfere with the criminal trial itself. *See Younger*, 401 U.S. at 43-44. Accordingly, in order to give "due respect to the autonomous military judicial system created by Congress," this Court should not impinge on the military commission process by addressing the legality of preventative detention. *New*, 129 F.3d at 643. Dismissal without prejudice is, accordingly, appropriate. *Lawrence v. McCarthy*, 344 F.3d 467, 474 (5th Cir. 2003) ("dismiss[ing] without prejudice" to "allow [] military [proceedings], both judicial and administrative, to run their course"). In the alternative, this Court should hold this matter in abeyance until military commission proceedings have concluded.

As noted above, an accused is entitled to have the commission make its own, independent determinations of whether a charged defendant is an "unlawful enemy combatant," before trial may proceed. 10 U.S.C. § 948a(1). That determination is one that the D.C. Circuit itself has made clear is reviewable at the culmination of proceedings, upon conviction. *Khadr*, 529 F.3d at 1117. Accordingly, one of the central issues before the military commission will be whether petitioner is

9

an unlawful enemy combatant. *See*, *e.g.*, *Hamdan*, 2008 WL 2780911, at *5. The military commission process provides a fully-adequate means for petitioner to challenge his status as an unlawful enemy combatant. *See id.*; *see also Lawrence*, 344 F.3d at 473 (abstention appropriate in case where military tribunal must "make an initial [factual] determination regarding the scope of their jurisdiction" because "[w]e trust that the military courts are * * * up to the task" and "an individual's status is a question of fact which the military courts are more intimately familiar with than the civil courts").

In *Hamdan*, Judge Robertson explained that military commissions provide an adversarial process in which the petitioner would be able to "call and cross-examine witnesses, to challenge the use of hearsay, and to introduce [their] own exculpatory evidence." *Hamdan*, 2008 WL 2780911, at * 5. With respect to the determination of unlawful enemy combatancy, the court noted that the petitioner had had a "jurisdictional hearing before the Commission" and also have "a fully adversarial trial that will provide a further test of the premise of his detention." *Id.* The court ultimately observed that a "real judge is presiding over the pretrial proceedings," in the military commission cases and that "[i]f the Military Commission judge gets it wrong, his error may be corrected by the CMCR. If the CMCR gets it wrong, it may be corrected by the D.C. Circuit. And if the D.C. Circuit gets it wrong, the Supreme Court may grant a writ of certiorari." 2008 WL 2780911, at *7.

Given this process, and the issues that would be vetted in the military commission proceedings, it is appropriate for this Court to abstain pending resolution in that adequate, independent forum. In adopting the MCA, Congress created an autonomous military judicial system to try unlawful enemy combatants, with a right of appeal to an Article III court, review that is even

more "removed from all military influence or persuasion" than was the case in *Councilman*, 420 U.S. at 738. If anything, Congress' decision to channel review to a *superior* federal court should militate even more strongly in favor of abstention. *See Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 75 (D.C. Cir. 1984) ("where a statute commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the *exclusive* review of the Court of Appeals").

One primary reason courts "abstain []from exercising equitable jurisdiction" is to "avoid[] duplicative proceedings." *Lawrence*, 344 F.3d at 474; *see Steffel v. Thompson*, 415 U.S. 452, 462 (1974) (in *Younger* abstention case, acknowledging strong interest in avoiding "duplicative legal proceedings or disruption of the state criminal justice system"). Because habeas proceedings would potentially duplicate military proceedings, they would impinge on the system Congress created for adjudicating the guilt of criminal suspects and, moreover, they would waste the scarce resources of the parties and the court. As the court in *Hamdan* concluded, a "full-scale habeas hearing as to Hamdan's classification" is not appropriate given the availability of the military process that Congress set out. *Hamdan*, 2008 WL 2780911, at *7. In such circumstances, "the courts should beware of disturbing the[] judgment [of Congress and the President]" *id.*, because "the military justice system must remain free from undue interference." *New*, 129 F.3d at 643.

To the extent the petition raises issues that are not also before the military commission, there is no reason for the Court to address them at this time. Because proceedings would be, at least in part, duplicative, habeas review during the pendency of criminal charges would also impinge upon the scarce resources of the courts and the parties at a time when resources should be focused on the roughly 200 cases involving detainees who are *not* charged for adversary trial before a military

11

commission. The Government, counsel for the detainees, and the judges of this Court have all undertaken significant efforts to facilitate expedited review of hundreds of pending Guantanamo habeas cases, consistent with the Supreme Court's direction that "[t]he detainees in these cases are entitled to a prompt habeas corpus hearing." *Boumediene*, 128 S. Ct. at 2275. Because the military commission process provides for robust adversarial proceedings to address criminal charges brought under the MCA (with review, if the defendant is convicted, by the D.C. Circuit), the Court should focus its resources, and enable the parties to focus theirs, on the other habeas cases.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should dismiss without prejudice the petition for habeas corpus or hold it in abeyance pending the completion of military commission proceedings.


Dated: August 12, 2008                    Respectfully submitted,

                                          GREGORY G. KATSAS
                                          Assistant Attorney General

                                          JOHN C. O'QUINN
                                          Deputy Assistant Attorney General

                                          ___/s/__Margaret Kuehne Taylor_____
                                          JOSEPH H. HUNT (D.C. Bar No. 431134)
                                          VINCENT M. GARVEY (D.C. Bar No. 127191)
                                          JUDRY L. SUBAR (D.C. Bar No. 347518)
                                          TERRY M. HENRY
                                          AUGUST E. FLENTJE
                                          MARGARET KUEHNE TAYLOR
                                          Attorneys
                                          United States Department of Justice
                                          Civil Division, Federal Programs Branch
                                          20 Massachusetts Ave., N.W.
                                          Washington, DC  20530
                                          Tel:  202/305-0658

                                          Attorneys for Respondents

13

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GHASSAN ABDULLAH AL SHARBI, *BY HIS NEXT FRIEND, ABDULLAH AL SHARBI* | ) ) ) ) |
| Petitioner, | ) ) ) |
| v. | ) ) |
| GEORGE W. BUSH, *et al*. | ) ) |
| Respondents. | ) ) ) |

Civil Action No. 05-CV-2348 (EGS)

Upon petitioner's Motion for to dismiss without prejudice, it is hereby ordered as follows:

This case is dismissed without prejudice.

Date: _____

UNITED STATES DISTRICT JUDGE