IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BENJAMIN MOHAMMAD AL-HABASHI, | ) | |
| Petitioner, by his next friend, | ) | |
| v. | ) | Civil Action No. 05-cv-765 (EGS) |
| GEORGE W. BUSH, President of the United States, et al., | ) | |
| Respondents. | ) | |
| GHASSAN ABDULLAH AL-SHARBI, | ) | |
| Petitioner, by his next friend, | ) | |
| v. | ) | Civil Action No. 05-cv-2348 (EGS) |
| GEORGE W. BUSH, President of the United States, et al., | ) | |
| Respondents. | ) | |
| RAMZI BIN AL-SHIBH, | ) | |
| Petitioner, | ) | |
| v. | ) | Civil Action No. 06-cv-1725 (EGS) |
| GEORGE W. BUSH, President of the United States, et al., | ) | |
| Respondents. | ) | |

**RESPONDENTS' COMBINED REPLY BRIEF SUPPORTING THEIR
MOTION TO DISMISS PETITIONER'S HABEAS CASE WITHOUT PREJUDICE
OR TO HOLD THE PETITION IN ABEYANCE PENDING
COMPLETION OF MILITARY COMMISSION PROCEEDINGS**

Respondents hereby submit a combined reply brief in support of their Motion To Dismiss Petitioner's Habeas Case Without Prejudice Or To Hold The Petition In Abeyance Pending The Completion of Military Commission Proceedings (Resps.' Mot.). Petitioners al Habashi, al Sharbi, and al Shibh have each opposed that motion in separate opposition briefs that substantially, but not completely, overlap. This combined brief will address all of the issues raised in the separate oppositions.

These petitioners are part of a subset of all the Guantanamo Bay detainees currently seeking habeas relief; petitioners are among those who have been charged with violations of the laws of war under the Military Commission Act of 2006, 10 U.S.C. §§ 948a-950w (the MCA). Because this subset of detainees faces the prospect of trial by military commission, the Court should focus on the adjudication of the habeas petitions for the remaining detainees, who have not been charged.

Abstention is appropriate in these cases because of the dictates of comity owed to the Congressionally mandated military commissions and because petitioners cannot now satisfy the prerequisites for equitable relief given the charges pending against them before the military commissions. Moreover, petitioners give no reason not to abstain in favor of the robust protections of the military commission process. Accordingly, this Court should either dismiss these petitions without prejudice or hold them in abeyance so that the cases of those detainees who are not currently charged under the MCA may take precedence.

**ARGUMENT**

The cornerstone of respondents' motion is the doctrine of abstention enunciated by the Supreme Court in cases such as <u>Younger v. Harris</u>, 401 U.S. 37 (1971), and <u>Schlesinger v. Councilman</u>, 420 U.S. 738 (1975). Those cases and their progeny stand for the proposition that a

habeas petitioner who has been criminally charged should first be required to exhaust his ability to assert his rights in his criminal proceedings before seeking habeas relief. Younger, 401 U.S. at 54; Schlesinger, 420 U.S. at 760-761. This deference to criminal tribunals is required by the doctrine of comity where, as here, the petitioner has an adequate remedy at law and will not suffer irreparable harm from having to proceed with the criminal trial. Younger, 401 U.S. at 43-45; Schlesinger, 420 U.S. at 754-756. Seeking to avoid this doctrine, petitioners raise multiple arguments trying, alternatively, to distinguish this precedent, to fit within one of the doctrine's narrow exceptions, or to evade the doctrine altogether. None of these arguments demonstrates that petitioners would be prejudiced from the abstention sought or commands the result that petitioners seek.

**I. Petitioners Have Failed Adequately To Distinguish Younger And Schlesinger**

Petitioners read Younger and Schlesinger far too narrowly in their attempts to distinguish these cases from the habeas petitions at issue here. Asserting distinctions based on the underlying tribunal (state courts or courts martial vs. the military commissions), who was being prosecuted (state criminal defendants or members of the military vs. aliens held as enemy combatants), or what relief was being sought (an injunction vs. a writ of habeas corpus), petitioners erroneously limit the scope of the Supreme Court's holdings in these cases. For example, it is well-settled that a writ of habeas corpus, like the injunctions sought in Younger and Schlesinger, is equitable relief. Schlup v. Delo, 513 U.S. 298, 319 (1995). For this reason alone, petitioners' attempted distinction based on the form of relief they seek is unavailing. But more fundamentally, petitioners' putative distinction fails to properly interpret the Supreme Court's opinions in Younger and Schlesinger, the holdings of which focused not on the precise form of equitable relief sought, but rather on its equitable nature. Younger, 401 U.S. at 43-44 (one reason for the

3

abstention doctrine is that "courts of equity should not act, and particularly should not restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief."); Schlesinger, 420 U.S. at 754 ("There remains the question of equitable jurisdiction, a question concerned, not with whether the claim falls within the limited jurisdiction conferred on the federal courts, but with whether consistently with the principles governing equitable relief the court may exercise its remedial powers."). Consequently, the doctrine of abstention applies with full force to the habeas petitions here. See In re Justices of the Superior Court, 218 F.3d 11, 17-18 (1st Cir. 2000) (holding Younger abstention barred pretrial habeas petition); Carden v. Montana, 626 F.2d 82, 83-85 (9th Cir. 1980) (same).

Petitioners' remaining attempts to distinguish Younger and Schlesinger wholly ignore the motivating principle underlying both decisions, "the notion of 'comity.'" Younger, 401 U.S. at 44. This need to respect the jurisdiction of coordinate judicial systems was rooted, in the case of petitions directed to state courts, in federalism, Younger, 401 U.S. at 44, and in the case of petitions directed to the military's courts-martial system, in the unique role the military plays in our country – "'a specialized society separate from civilian society'" whose role requires a "respect for duty and a discipline without counterpart in civilian life." Schlesinger, 420 U.S. at 757 (quoting Parker v. Levy, 417 U.S. 733, 743 (1974)). In the case of the military commission system here, a different but equally important concept – the specialized nature of the law of war – supports the application of comity. Specifically, Congress through the MCA has invoked the well-settled constitutional power to authorize the military in the first instance to try before these commissions offenses against the law of war by enemy combatants. See Ex parte Quirin, 317 U.S. 1, 28-31 (1942). Comity, therefore, invalidates petitioners' attempts to distinguish Younger

4

and Schlesinger on the basis of forum or defendant, and requires that this Court defer to the scheme Congress has chosen prior to entertaining a collateral attack such as a petition for a writ of habeas corpus. Accordingly, this Court should abstain from adjudicating petitioners' complaints of defects in the military commission process and allow that process to proceed.

**II. Petitioners Do Not Meet The Criteria For The Exceptions To Abstention**

Petitioners attempt to bring themselves within various narrow exceptions to the doctrine of abstention, but these attempts fail. First, they seek to circumvent abstention by claiming that abstention will result in irreparable harm to them. But for such an exception to apply, the harm must be not just irreparable, but also both "great and immediate." Fenner v. Boykin, 271 U.S. 240, 243 (1926). Moreover, the Supreme Court has repeatedly made clear that the mere fact that a defendant has to face a criminal trial is insufficient to establish irreparable harm in the "special legal sense of that term," even while it acknowledged the inevitable challenges incident to any criminal prosecution, such as cost, anxiety, and inconvenience. Younger, 401 U.S. at 46. The rationale behind this exception-to-the-exception is that federal courts may not presume that another government tribunal will not fully apply "the fundamental law of the land." Ex parte Royall, 117 U.S. 241, 252 (1886). Thus, this Court, in deciding whether to abstain, must presume that the judges of the military commissions (and the judges on the subsequent appellate panels, which include the Court of Appeals for the District of Columbia Circuit and the Supreme Court) will adhere to their duty and fully apply the Constitution and federal laws to the matters before them. Accordingly, to the extent that petitioners have alluded to various objections that they may have to the existence, procedures, or rules of the military commissions, those objections provide no basis for this Court to proceed with these habeas petitions. Rather, they are nothing more than

5

the normal incidents of having to proceed with the criminal proceeding and, hence, are not a basis for demonstrating irreparable harm.

While Schlesinger does note that a federal court may entertain a habeas petition that raises a "substantial" jurisdictional argument, 420 U.S. at 759, none of petitioners' arguments rise to this level. As Schlesinger makes plain, this exception applies only when the issue is whether Congress has the Constitutional power to authorize the tribunal to try the petitioner at all. Id. In the cases cited by the Supreme Court in Schlesinger to explain this exception, the issue was whether Congress had the constitutional power under Article I to authorize the military to try civilians by courts martial. Id. Moreover, the issue in those cases was not whether petitioners were civilians – that was essentially conceded as a factual matter – but whether Congress had the power to try civilians via military courts martial. Here, this latter question has, as noted above, already been settled: the Supreme Court has held that Congress has the authority under the Constitution to authorize the trials by military commissions of enemy combatants accused of law-of-war violations. See Ex parte Quirin, 317 U.S. at 28-31. Thus, petitioners are foreclosed from pursuing that question on habeas here. But to the extent that petitioners' jurisdictional argument is that they are not enemy combatants, that factual question is appropriately directed in the first instance to the military commission itself and then on direct appeal to the Court of Military Commission Review, the Court of Appeals for the District of Columbia Circuit, and the Supreme Court. Indeed, contrary to petitioners' assertion, the Supreme Court has routinely acknowledged that tribunals of limited jurisdiction – including United States District Courts – are the proper arbiters of their jurisdiction in the first instance. United States v. Ruiz, 536 U.S. 622, 628 (2002); cf. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995) (arbitrator entitled to determine scope of subject matter jurisdiction); Fed. R. Civ. P. 12 (allowing district courts to

adjudicate jurisdiction). And as for appellate review, the Court of Appeals for the District of Columbia Circuit has recently confirmed that it will be able to review these types of jurisdictional decisions, and that the proper time for that review is post-judgment:

> This Court will have opportunity to review this procedural decision post-judgment if necessary and can then determine whether the commission properly determined its jurisdiction and acted in conformity with the law.

Khadr v. United States, 529 F.3d 1112, 1118-19 (D.C. Cir. 2008). Accordingly, a collateral judgment by this Court deciding the jurisdiction of the military commission before that issue has even been raised before the military commission judge would be improper under Younger and Schlesinger.

The cases cited by the petitioners are not the contrary. Petitioner Al-Shibh cites several cases concerning the appropriateness of interlocutory appeals on various grounds, cases that merely serve to reinforce that such matters are most appropriately handled via direct appeal and not by collateral attack. See Lauro Lines S.R.I. v. Chasser, 490 U.S. 495 (1989) (holding denial of motion to dismiss based on forum selection clause is not immediately appealable collateral order); Helstoski v. Meanor, 442 U.S. 500 (1979) (holding that denial of a Congressman's motion to dismiss based on the Speech and Debate Clause is immediately appealable); Abney v. United States, 421 U.S. 651 (1977) (holding that denial of a criminal defendant's motion to dismiss based on double jeopardy is immediately appealable). Moreover, as Khadr and the cases cited therein demonstrate, the type of pretrial jurisdictional issues being raised by petitioners do not fit within the narrow scope of the collateral order doctrine, Khadr, 529 F.3d at 1117-18, and, as a consequence, they are not proper subjects of pre-trial collateral attack.

Similarly, petitioner al-Habashi cites several cases in which habeas petitions were allegedly entertained pre-trial, thus supposedly justifying not abstaining here. But none of those

7

cases is apposite. For example, in Levine v. Torvik, 986 F.2d 1506 (6th Cir. 1993), a state defendant had been tried, found innocent by reason of insanity, and confined to a state mental health facility. Thus, the petition for a writ of habeas corpus was not pre-trial as petitioner suggests, but rather post-trial. In Walck v. Edmonson, 472 F.3d 1227 (10th Cir. 2007), the criminal defendant had already been subjected to one trial where a mistrial was declared because of the absence of a prosecution witness. Thus, Walck represents a straightforward application of Younger, which itself makes clear that abstention is not appropriate for successive prosecutions of the same offense. 401 U.S. at 49. And lastly, while Matta-Ballesteros v. Henman, 896 F.2d 255 (7th Cir. 1990), involved adjudication of a habeas petition pre-trial, more specifically a denial of a habeas petition by the district court (notably without an evidentiary hearing), the case did not address the abstention doctrine at all. This case, therefore, fails to support a decision not to abstain here.

      The final exception that petitioners seek to invoke is that for extraordinary circumstances. See Younger, 401 U.S. at 49 (noting that prosecutions brought in bad faith or a series of repeated, failed prosecutions for the same offense brought merely to harass would constitute extraordinary circumstances under which the abstention doctrine would not apply). Here, petitioners assert that the length of their detention amounts to just such an extraordinary circumstance. To the contrary, however, there is nothing extraordinary here. Congress, in response to a decision of the Supreme Court striking down the prior system of military commissions, see Hamdan v. Rumsfeld, 548 U.S. 557 (2006), has created through the MCA a new system permitting trials of alien enemy combatants by military commissions. There have not been in these cases anything approaching the repeated prosecutions or other extraordinary circumstances alluded to in Younger. Rather, it would be extraordinary for the Court basically to disregard the system established by Congress

8

and to require overlapping habeas and military commission proceedings to go forward simultaneously.

### III. The Military Commission Process Provides An Adequate Alternative That Warrants Abstention

Lastly, petitioners seek to evade the application of Younger and Schlesinger by arguing that the military commissions are flawed. None of their arguments provides any basis for declining to abstain.

First, petitioners allege that because there is doubt as to whether an acquittal by a military commission will result in the release of a petitioner, there is no certainty that the commissions could provide the remedy of release available under habeas. But this argument relies on two faulty premises. First, it assumes that the petitioners will be acquitted. At this stage, prior to their trial, there is no way to ascertain this. If, contrary to their assumption, they are convicted, any refusal to release an acquitted petitioner would not be ripe, as they will in all likelihood be sentenced to imprisonment for a term of years. Second, this argument also assumes that the government will not release them as enemy combatants if they are acquitted. That too cannot be known until and if they are acquitted. But it is only if they are acquitted and the government refuses to release them that it would be arguably proper for this Court to then entertain their habeas petitions, as the military commission will then have completed its work and abstention will no longer be an issue.

Next, petitioner al-Habashi mistakenly asserts that a pre-trial hearing on the issue of jurisdiction by the military commission judge would not address his status as an enemy combatant. But, to the contrary, the judge as a matter of necessity would have to make such a determination at that stage, unless petitioner were to concede the point. As al-Habashi himself argues, the jurisdiction of the military commissions is limited to trial of "unlawful enemy

9

combatants." 10 U.S.C.§ 948d. A necessary predicate to whether a petitioner is "an unlawful enemy combatant" within the meaning of the MCA is that the petitioner is part of the broader category of "enemy combatant" in the first place. Consequently, the military commission judge will necessarily have to address the issue raised by petitioner, namely his designation as an enemy combatant.[1] Accordingly, this Court's review would be duplicative, and abstention is thus appropriate at this time.

Third, petitioners complain that the military commission process has impermissible delays built into it. For example, after charges are sworn out against a defendant, they are forwarded to the Convening Authority for review as to their legal and factual sufficiency. See R. Mil. Comm'ns 401. The Convening Authority can dispose of the charges by dismissing any or all of them (including charges the Convening Authority does not believe are sufficiently supported by the evidence) or the Convening Authority may refer some or all of the charges to a military commission for trial. Id. Petitioners complain that this period allows the government to extend their detention indefinitely. There is, however, no evidence to support this speculation. Currently, charges against al-Shibh have been approved by the Convening Authority and referred to a military commission, so this issue does not apply to him. As for al-Habashi and al-Sharbi, both of these petitioners have been awaiting approval of their charges by the Convening Authority since only May 28, 2008. See http://www.defenselink.mil/news/Mohamed%20-%20sworn0603.pdf (last visited 9/3/08) (al Habashi) and http://www.defenselink.mil/news/d20080529Sharbi.pdf (last visited 9/3/08) (al Sharbi). This period of slightly over three months is not sufficient to establish the inordinate delay petitioners assert. Moreover, it is important to

---

[1] To the extent petitioner's argument can be read as insinuating that the military commission may determine he is not an "unlawful" enemy combatant but still not order his release because he is an "enemy combatant," respondents respectfully direct the Court to the directly preceding response to petitioners' allegation that the government may refuse to release acquitted detainees.

note that once the Convening Authority approves the charges and refers them to a military commission, the petitioners will receive speedy trial rights. The trial proceedings must begin within 30 days after the detainee is served with the referred charges, and the commission must be assembled within 120 days. R. Mil. Comm'ns 707. Accordingly, without more, the lack of deadline for the Convening Authority to complete its review and refer charges does not argue against abstention.

Perhaps because charges have already been referred against him, petitioner al-Shibh raises a different delay argument, namely the Convening Authority's right to review any conviction by a commission before submitting it for appellate review. Here again, there is no deadline for the Convening Authority to act, but even more so than with the referral of charges, there is no concern regarding possible delay. First, the Convening Authority's review is limited to convictions; acquittals are not reviewable. 10 U.S.C. § 950b. Second, the primary purpose is to review the proceedings for possible reduction of the sentence or reversal of a finding of guilt. See id. Thus, the review, in fact, inures to a convicted detainee's benefit. And as a convicted detainee will also have been sentenced prior to the review, any post-verdict delays do not raise any concerns that he is being held without having been heard. Thus, such speculative assertions of potential delay provide no reason for this Court not to abstain.

Finally, petitioners read the scope of the Court of Appeals' jurisdiction under the MCA too narrowly in an attempt to argue that the right of appeal from any conviction by a military commission does not warrant abstention at this time. They note first that review by the Court of Appeals for the District of Columbia Circuit is restricted to questions of law. 10 U.S.C. § 950g(b). From this they postulate that the appellate court cannot review the facts underlying any conviction. But, as noted in respondents' motion, this provision allows the court to review the

11

legal sufficiency of the evidence supporting the conviction.  Resps.' Mot. at 4; see also Khadr, 529 F.3d at 1118-19 (Court of Appeals able to review factual determination that a detainee is an unlawful enemy combatant post-judgment).

Nor does the MCA, properly construed, prevent the Court of Appeals from reviewing a military commission's procedures and standards.  The MCA defines that court's jurisdictional scope of review as:

> (1) whether the final decision was consistent with the standards and procedures specified in this chapter; and
>
> (2) to the extent applicable, the Constitution and the laws of the United States.

10 U.S.C.§ 950g(c).  Petitioners err again by reading this provision too narrowly.  Nothing in this provision necessarily bars the Court of Appeals from evaluating the military commission's procedures and standards for compliance with the Constitution and federal law.  But more to the point, this Court need not and should not decide this matter in the abstract today.  Petitioners essentially ask this Court to opine on the jurisdiction of and effectiveness of review in the Court of Appeals.  The proper body for that inquiry, however, is the court subject to this provision (the Court of Appeals for the District of Columbia Circuit), and the proper time for that inquiry is when that court is faced with a concrete issue before it.  It is sufficient for now to note, as explained above, that an equally plausible reading of this provision is that the Court of Appeals may be allowed to evaluate given procedures of the military commissions against the requirements of the Constitution and federal laws.  But it is for that court, when squarely faced with the issue, to decide for itself whether the MCA entitles it to do so.

In summary, none of petitioners' arguments warrants this Court declining to abstain until the resolution of the military commission process adopted by Congress.  As the Court of Appeals for the District of Columbia has held concerning military commission proceedings under the

MCA: "[t]here is no substantial public interest at stake in [these cases] that distinguish[] [them] from the multitude of criminal cases for which post-judgment review of procedural and jurisdictional decisions has been found effective." Khadr, 529 F.3d at 1118.

## CONCLUSION

For the reasons stated herein and in respondent's motion, respondents respectfully request that the Court dismiss these cases without prejudice or, in the alternative, hold them in abeyance pending resolution of petitioners' military commission cases.

Dated: September 4, 2008

Respectfully submitted,

GREGORY KATSAS
Assistant Attorney General

JOHN C. O'QUINN
Deputy Assistant Attorney General

     /s/ Ronald J. Wiltsie
JOSEPH H. HUNT (D.C. Bar No.431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
JUDRY L. SUBAR (D.C. Bar No. 347518)
TERRY M. HENRY
ANDREW I. WARDEN
RONALD J. WILTSIE (D.C. Bar No. 431562)
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC  20044
Tel:  (202) 514-3969
Attorneys for Respondents